**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| MARTIN BELTRAN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>NATIONSTAR MORTGAGE LLC d/b/a MR. COOPER,<br><br>Defendant. | Case No. 3:26-cv-00744-X |

**DEFENDANT MR. COOPER'S AMENDED MOTION TO DISMISS THE AMENDED COMPLAINT**

## TABLE OF CONTENTS


INTRODUCTION .......... 1

FACTUAL BACKGROUND .......... 2

A. Plaintiff Alleges Website Use, But Not Data Disclosure. .......... 2

B. Plaintiff Agreed to Mr. Cooper's Alleged Data Practices. .......... 3

C. Plaintiff Agreed to Mr. Cooper's Terms, Which Limit Its Liability. .......... 4

PROCEDURAL BACKGROUND .......... 5

ARGUMENT .......... 5

I. The Complaint Should Be Dismissed Under Rule 12(b)(1) for Lack of Standing .......... 5

A. Plaintiff Does Not Allege He Suffered an Injury in Fact. .......... 5

B. Plaintiff Does Not Allege any Injury Traceable to Mr. Cooper. .......... 9

II. The Complaint Should Be Dismissed Under Rule 12(b)(6) for Failure to State a Claim. 10

A. Plaintiff's Consent to the Alleged Data Practices Bars All of His Claims. .......... 10

B. Plaintiff's Claims Are Barred by the Terms' Limitation-of-Liability Clause. .......... 11

C. Plaintiff's Common-Law Claims Fail as a Matter of Law (Counts 1, 5, 6, 7). .......... 12

1. Plaintiff Does Not Plead any Breach of Contract (5). .......... 12

2. The Unjust Enrichment Claim Should Be Dismissed (6). .......... 13

3. The Breach of Confidence Claim Is Insufficiently Pled (7). .......... 14

4. The Negligence Claim Should Be Dismissed (1) .......... 14

D. Plaintiff's California Statutory Claims Fail (Counts 2–4, 8–10). .......... 16

1. The Choice-of-Law Provision Bars Plaintiff's Statutory Claims (All). .......... 16

2. Plaintiff's CDAFA Claim Fails (2). .......... 17

3. Plaintiff's UCL Claim Fails (3). .......... 18

4. Plaintiff Does Not State a Claim Under the CCPA (4). .......... 18

E. Plaintiff's ECPA and CIPA Claims Fail (Counts 8–12). .......... 19

1. Plaintiff's Consent Bars His CIPA and ECPA Claims (All). .......... 20

2. The CIPA (§ 631(a)) and ECPA Claims Lack "Contents" (8, 11–12). .......... 20

3. The CIPA (§ 631(a)) and ECPA Claims Lack Interception (8, 11–12). .......... 22

4. The CIPA (§ 631(a)) Claim Fails, as Plaintiff Does Not Allege that Mr. Cooper "Aided" or "Conspired" with Third Parties (8). .......... 22

5. The CIPA (§ 632(a)) Claim Lacks Eavesdropping or Recording (9). .......... 23

6. The CIPA (§ 638.51) Claim Fails (10). .......... 24

7. The ECPA (§ 2511(3)(a)) Claim Fails (12). .......... 24

F. Plaintiff's Claims Are Time-Barred (Counts 1–2, 4, 6–12). .......... 25

CONCLUSION .......... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Active Zone of Am., LLC v. SDV (USA) Inc.*,
2008 WL 11387133 (S.D. Tex. Oct. 22, 2008)....................5

*AdvoCare Int'l, L.P. v. Hardy*,
2010 WL 11618798 (N.D. Tex. Sept. 30, 2010)....................12

*Allison v. United Wholesale Mortg.*,
2025 WL 3702863 (N.D. Cal. Dec. 21, 2025)....................10

*In re Anthem, Inc. Data Breach Litig.*,
162 F. Supp. 3d 953 (N.D. Cal. 2016)....................12

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................10

*B.K. v. Eisenhower Med. Ctr.*,
721 F. Supp. 3d 1056 (C.D. Cal. 2024)....................16

*Beasley v. Greenlee*,
2024 WL 3851382 (N.D. Tex. July 25, 2024), *report and recommendation adopted*, 2024 WL 3851599 (N.D. Tex. Aug. 16, 2024)....................22

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................10

*Beltran v. Nationstar Mortg. LLC*,
2026 WL 637337 (N.D. Cal. Mar. 6, 2026)....................4, 5

*Birdsong v. Apple, Inc.*,
590 F.3d 955 (9th Cir. 2009)....................18

*Blackwood-Carter v. State Farm Lloyds*,
2021 WL 12286960 (N.D. Tex. Mar. 29, 2021)....................3

*Bogard v. TikTok Inc.*,
2025 WL 3637035 (N.D. Cal. Dec. 15, 2025), *appeal docketed sub nom. Bogard v. Alphabet Inc.*, No. 26-246 (9th Cir. Jan. 13, 2026)....................18

*Boulton v. Community.com, Inc.*,
2025 WL 314813 (9th Cir. Jan. 28, 2025)....................22

*Crano v. Sojern Inc.*,
2026 WL 1670136 (N.D. Cal. June 9, 2026)....................7

*In re Broadcast.com, Inc.*,
2001 WL 36050382 (E.D. Tex. Dec. 12, 2001)....25

*Brodsky v. Apple Inc.*,
445 F. Supp. 3d 110 (N.D. Cal. 2020)....20

*Brown v. Learfield Commc'ns, LLC*,
2024 WL 3676709 (W.D. Tex. June 27, 2024)....20

*Bruce v. Nationstar Mortg.*,
2014 WL 2587527 (N.D. Tex. May 20, 2014), *report and recommendation adopted*, 2014 WL 2593240 (N.D. Tex. June 10, 2014)....15

*Camacho v. Torres*,
2023 WL 4602772 (S.D. Tex. June 6, 2023), *report and recommendation adopted*, 2023 WL 4602722 (S.D. Tex. July 18, 2023)....9

*In re Cap. One Consumer Data Sec. Breach Litig.*,
488 F. Supp. 3d 374 (E.D. Va. 2020)....14

*Capps v. Bullion Exch., LLC*,
2019 WL 4918682 (N.D. Okla. July 9, 2019)....12

*Casillas v. Transitions Optical, Inc.*,
2024 WL 4873370 (Cal. Super. Ct. Sept. 9, 2024)....24

*Cooper v. Nat'l Credit Adjusters, LLC*,
2022 WL 17656316 (N.D. Tex. Nov. 28, 2022), *report and recommendation adopted sub nom.* 2022 WL 17631533 (N.D. Tex. Dec. 13, 2022)....6

*Cottle v. Plaid Inc.*,
536 F. Supp. 3d 461 (N.D. Cal. 2021)....17

*Craven v. Canal Barge Co.*,
135 F. App'x 632 (5th Cir. 2004)....13

*Crowley v. CyberSource Corp.*,
166 F. Supp. 2d 1263 (N.D. Cal. 2001)....25

*Curtis v. Cerner Corp.*,
621 B.R. 141 (S.D. Tex. 2020)....13

*Daghaly v. Bloomingdales.com, LLC*,
2024 WL 5134350 (9th Cir. Dec. 17, 2024)....6, 7

*Doe v. Meta Platforms, Inc.*,
690 F. Supp. 3d 1064 (N.D. Cal. 2023)....17

*Electrostim Med. Servs., Inc. v. Health Care Serv. Corp.*,
614 F. App'x 731 (5th Cir. 2015) ....................12

*Er Addison, LLC v. Aetna Health, Inc.*,
2026 WL 948511 (N.D. Tex. Apr. 8, 2026) ....................13

*In re Facebook Priv. Litig.*,
791 F. Supp. 2d 705 (N.D. Cal. 2011), *aff'd*, 572 F. App'x 494 (9th Cir. 2014) ....................18

*Fernandez v. Leidos, Inc.*,
127 F. Supp. 3d 1078 (E.D. Cal. 2015)....................10

*Garcia v. Blackhawk Network, Inc.*,
2026 WL 925028 (C.D. Cal. Apr. 1, 2026) ....................7

*Garcia v. J.P. Morgan Chase, N.A.*,
2026 WL 562136 (C.D. Cal. Feb. 25, 2026)....................19

*Gauss v. PSP Dallas LP*,
2022 WL 1813603 (N.D. Tex. June 2, 2022) ....................25

*GlobeRanger Corp. v. Software AG*,
27 F. Supp. 3d 723 (N.D. Tex. 2014), *aff'd*, 836 F.3d 477 (5th Cir. 2016)....................14

*Gonzales v. Uber Techs., Inc.*,
305 F. Supp. 3d 1078 (N.D. Cal. 2018) ....................17

*Gorman v. Ethos Grp. Inc.*,
2024 WL 1257493 (N.D. Tex. Mar. 25, 2024)....................14

*Great Lakes Reinsurance (UK) PLC v. Tico Time Marine LLC*,
2011 WL 1044154 (S.D. Tex. Mar. 16, 2011)....................16

*Griffey v. Magellan Health Inc.*,
2022 WL 1811165 (D. Ariz. June 2, 2022) ....................19

*Hamm v. Mercedes-Benz USA, LLC*,
2022 WL 913192 (N.D. Cal. Mar. 29, 2022)....................18

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. July 18, 2022) ....................21

*Hanan v. Crete Carrier Corp.*,
2020 WL 42269 (N.D. Tex. Jan. 3, 2020) ....................14

*Hancock v. Chi. Title Ins. Co.*,
635 F. Supp. 2d 539 (N.D. Tex. 2009) ....................13

*Hayden v. Retail Equation, Inc.*,
2022 WL 2254461 (C.D. Cal. May 4, 2022), *on reconsideration*, 2022 WL 3137446 (C.D. Cal. July 22, 2022) ....19

*Hazel v. Prudential Fin., Inc.*,
2023 WL 3933073 (N.D. Cal. June 9, 2023) ....18

*HDI Glob. Specialty SE v. Coreslab Structures (Tex.) Inc.*,
2021 WL 1226561 (W.D. Tex. Mar. 31, 2021), *report and recommendation adopted*, 2021 WL 2843842 (W.D. Tex. May 19, 2021)....13

*Heinz v. Amazon.com, Inc.*,
760 F. Supp. 3d 1183 (W.D. Wash. 2024)....16

*Henderson v. Reventics, LLC*,
2024 WL 5241386 (D. Colo. Sept. 30, 2024)....10

*Hikma Pharms. USA Inc. v. Amarin Pharma, Inc.*,
608 U.S. ---, 2026 WL 1593307 (June 4, 2026) ....9

*Hyde Corp. v. Huffines*,
314 S.W.2d 763 (Tex. 1958)....14

*Ingrao v. AddShoppers, Inc.*,
2024 WL 4892514 (E.D. Pa. Nov. 25, 2024) ....8, 20

*Int'l Marine, L.L.C. v. FDT, L.L.C.*,
619 F. App'x 342 (5th Cir. 2015) ....5

*Isgur v. Meta Platforms, Inc.*,
2026 WL 194640 (N.D. Cal. Jan. 26, 2026)....18

*Khamooshi v. Politico LLC*,
2025 WL 2822879 (N.D. Cal. Oct. 2, 2025)....8

*King v. Hard Rock Cafe Int'l (USA), Inc.*,
2025 WL 1635419 (E.D. Cal. June 9, 2025) ....21, 24

*Kishnani v. Royal Caribbean Cruises Ltd.*,
2025 WL 1745726 (N.D. Cal. June 24, 2025)....24

*Kleck v. Bausch & Lomb, Inc.*,
145 F. Supp. 2d 819 (W.D. Tex. 2000)....14

*Konop v. Hawaiian Airlines, Inc.*,
302 F.3d 868 (9th Cir. 2002) ....22

*Lakes v. Ubisoft, Inc.*,
777 F. Supp. 3d 1047 (N.D. Cal. 2025), *appeal docketed*, No. 25-2857 (9th Cir. May 2, 2025)....11, 20

*Larroque v. First Advantage LNS Screening Sols., Inc.*,
2016 WL 4577257 (N.D. Cal. Sept. 2, 2016)....6

*Laufer v. Mann Hosp., L.L.C.*,
996 F.3d 269 (5th Cir. 2021)....5

*Little Seeds Children's Ctr., Inc. v. Citibank, N.A.*,
815 F. Supp. 3d 891 (N.D. Cal. 2025)....19

*Logan v. Marker Grp., Inc.*,
2024 WL 3489208 (S.D. Tex. July 18, 2024)....13, 14

*Lowman v. Enter. Fin. Grp., Inc.*,
2025 WL 2994737 (N.D. Tex. Aug. 12, 2025), *report and recommendation adopted*, 2025 WL 2778380 (N.D. Tex. Sept. 30, 2025)....16

*Maghoney v. Dotdash Meredith, Inc.*,
2026 WL 497402 (S.D. Cal. Feb. 23, 2026)....7

*Magliocca v. United Healthcare Servs., Inc.*,
2026 WL 878694 (E.D. Cal. Mar. 31, 2026)....8

*Malik v. Cont'l Airlines, Inc.*,
369 F. App'x 588 (5th Cir. 2010)....11

*Manier v. Triple Lift Inc.*,
2026 WL 1295546 (C.D. Cal. Apr. 15, 2026)....15

*Masterson v. IMA Fin. Grp., Inc.*,
2023 WL 8647157 (D. Kan. Dec. 14, 2023)....10

*Maynard v. PayPal, Inc.*,
2019 WL 3552432 (N.D. Tex. Aug. 5, 2019)....16

*Mikulsky v. Bloomingdale's, LLC*,
713 F. Supp. 3d 833 (S.D. Cal. 2024)....21

*Mikulsky v. Noom, Inc.*,
682 F. Supp. 3d 855 (S.D. Cal. 2023)....7

*Mitchener v. CuriosityStream, Inc.*,
815 F. Supp. 3d 845 (N.D. Cal. 2025)....8, 24

*Mitchener v. Talkspace Network LLC*,
2025 WL 1822801 (C.D. Cal. June 27, 2025)....7

*Morrison v. Weyerhaeuser Co.*,
119 F. App'x 581 (5th Cir. 2004) ....................6

*Morrow v. W. Tex. Gas, Inc.*,
2025 WL 2816760 (W.D. Tex. Jan. 9, 2025) ....................6

*N.Z. v. Fenix Int'l Ltd.*,
2025 WL 3627591 (C.D. Cal. Dec. 12, 2025) ....................17

*In re New Era Enters. Inc. Data Incident Litig.*,
2026 WL 303547 (S.D. Tex. Feb. 4, 2026) ....................12

*Nguyen v. Abbott Lab'ys, Inc.*,
2026 WL 579206 (N.D. Ill. Mar. 2, 2026)....................21

*Nienaber v. Overlake Hosp. Med. Ctr.*,
733 F. Supp. 3d 1072 (W.D. Wash. 2024)....................22

*Perlaki v. J.B. Poindexter & Co.*,
2025 WL 754503 (S.D. Tex. Mar. 10, 2025)....................8, 16

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025) ....................7, 8

*Pratt v. Higgins*,
2023 WL 4564551 (N.D. Cal. July 17, 2023)....................17

*Pruchnicki v. Envision Healthcare Corp.*,
845 F. App'x 613 (9th Cir. 2021) ....................16

*Rand v. Eyemart Express, LLC*,
2024 WL 4376162 (N.D. Tex. Oct. 1, 2024)....................12

*Rand v. Eyemart Express, LLC*,
2025 WL 1519726 (N.D. Tex. May 27, 2025) ....................20

*Revitch v. New Moosejaw, LLC*,
2019 WL 5485330 (N.D. Cal. Oct. 23, 2019)....................23

*Richter v. Carnival Corp.*,
2019 WL 5894213 (N.D. Tex. Nov. 12, 2019)....................14

*Riddle v. X Corp.*,
2025 WL 3452457 (W.D. Tex. July 11, 2025) ....................11

*Rodriguez v. Autotrader.com, Inc.*,
2025 WL 1085787 (C.D. Cal. Apr. 4, 2025) ....................6

*Rodriguez v. Ford Motor Co.*,
722 F. Supp. 3d 1104 (S.D. Cal. 2024)....................23

*Rodriguez v. Google LLC*,
2021 WL 2026726 (N.D. Cal. May 21, 2021) ....23

*Rothwell v. Marshall Creek Ranch, LLC*,
2025 WL 973939 (E.D. Tex. Feb. 11, 2025), *report and recommendation adopted*, 2025 WL 965754 (E.D. Tex. Mar. 31, 2025) ....11

*Rousset v. AT&T Inc.*,
2015 WL 9473821 (W.D. Tex. Dec. 28, 2015), *report & recommendation adopted as modified*, 2016 WL 4249164 (W.D. Tex. Feb. 29, 2016) ....20

*Sanchez v. Cars.com Inc.*,
2025 WL 487194 (Cal. Super. Ct. Jan. 27, 2025) ....24

*Santoro v. Tower Health*,
2024 WL 1773371 (E.D. Pa. Apr. 24, 2024) ....15

*Shepherd v. Regan*,
2023 WL 8006413 (N.D. Tex. Nov. 17, 2023), *aff'd sub nom.* 2024 WL 3738475 (5th Cir. Aug. 9, 2024) ....8

*In re Shields Health Care Grp., Inc. Data Breach Litig.*,
721 F. Supp. 3d 152 (D. Mass. 2024) ....12

*Sikes v. McGraw-Edison Co.*,
671 F.2d 150 (5th Cir. 1982) ....14

*Smith v. Facebook, Inc.*,
745 F. App'x 8 (9th Cir. 2018) ....11

*Smith v. USAA Ins. Agency, Inc., of Tex.*,
2022 WL 892699 (N.D. Tex. Mar. 10, 2022), *report and recommendation adopted*, 2022 WL 891441 (N.D. Tex. Mar. 25, 2022) ....15

*Smith v. YETI Coolers, LLC*,
754 F. Supp. 3d 933 (N.D. Cal. 2024) ....22, 23

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016), *as revised* (May 24, 2016) ....5

*Stevens v. TD Bank, N.A.*,
2025 WL 1779164 (D.N.J. June 27, 2025) ....14

*Strojnik v. Landry's Inc.*,
2019 WL 7461681 (S.D. Tex. Dec. 9, 2019), *report and recommendation adopted sub nom.* 2020 WL 42454 (S.D. Tex. Jan. 2, 2020) ....15

*Swarts v. Home Depot, Inc.*,
689 F. Supp. 3d 732 (N.D. Cal. 2023) ....22, 23

*Torres v. SeatGeek, Inc.*,
2026 WL 1495202 (N.D. Cal. May 28, 2026) ....................8, 17

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) ....................6

*Tutus, LLC v. JLG Indus., Inc.*,
2021 WL 2954423 (S.D. Tex. June 21, 2021), *report and recommendation adopted,* 2021 WL 2954067 (S.D. Tex. July 14, 2021) ....................15

*Urbanski v. Blunck*,
2023 WL 2801212 (N.D. Tex. Apr. 5, 2023) ....................25

*In re VeriSource Servs., Inc. Data Breach Litig.*,
2026 WL 1020531 (S.D. Tex. Feb. 6, 2026), *report and recommendation adopted*, 2026 WL 734067 (S.D. Tex. Mar. 16, 2026) ....................13

*Weston v. Chase Mortg. Corp.*,
2014 WL 3942716 (S.D. Tex. Aug. 12, 2014) ....................7

*Williams v. X Corp.*,
2026 WL 885208 (N.D. Tex. Mar. 16, 2026*), report and recommendation adopted sub nom.* 2026 WL 885048 (N.D. Tex. Mar. 31, 2026) ....................11

*Wooten v. BioLife Plasma Servs. L.P.*,
807 F. Supp. 3d 1139 (E.D. Cal. 2025) ....................9

*Xu v. Reuters News & Media Inc.*,
2025 WL 488501 (S.D.N.Y. Feb. 13, 2025) ....................6, 8, 9, 24

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021) ....................21

*Yoon v. Meta Platforms, Inc.*,
2024 WL 5264041 (N.D. Cal. Dec. 30, 2024) ....................23

*In re Zappos.com, Inc.*,
2013 WL 4830497 (D. Nev. Sept. 9, 2013) ....................12

*In re Zoom Video Commc'ns Inc. Priv. Litig.*,
525 F. Supp. 3d 1017 (N.D. Cal. 2021) ....................17

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014) ....................21

**Statutes**

15 U.S.C. § 6801 *et seq* ....................19

18 U.S.C. § 2510 *et seq* ....................19

18 U.S.C. § 2510(15) .......... 25

18 U.S.C. § 2511(1) .......... 15, 20, 22

18 U.S.C. § 2511(2)(d) .......... 20

18 U.S.C. § 2511(3) .......... 22

18 U.S.C. § 2511(3)(a) .......... 15, 24

18 U.S.C. § 2511(3)(b)(ii) .......... 20

18 U.S.C. § 2520 .......... 25

Cal. Bus. & Prof. Code § 17200 *et seq*. .......... 18

Cal. Bus. & Prof. Code § 17208 .......... 25

Cal. Civ. Code § 1798.100 *et seq*. .......... 18, 19

Cal. Civ. Code § 1798.115 .......... 19

Cal. Civ. Code § 1798.145(e) .......... 19

Cal. Civ. Code § 1798.150 .......... 19

Cal. Civ. Code § 1798.150(a) .......... 19

Cal. Civ. Code § 1798.150(b) .......... 19

Cal. Civ. Code § 1798.150(c) .......... 19

Cal. Civ. Proc. Code § 338 .......... 25

Cal. Civ. Proc. Code § 340 .......... 25

Cal. Penal Code § 502 .......... 17

Cal. Penal Code § 630 *et seq*. .......... 20

Cal. Penal Code § 631(a) .......... 15, 20, 21, 22

Cal. Penal Code § 632 .......... 23

Cal. Penal Code § 632(a) .......... 15, 20, 23

Cal. Penal Code § 638.51 .......... 20, 24

Tex. Civ. Prac. & Rem. Code § 16.003 .......... 25

Tex. Civ. Prac. & Rem. Code § 16.004 .......... 25

## INTRODUCTION

This case is one of many brought by a cottage industry of plaintiffs challenging the nearly ubiquitous use of advertising trackers on websites. Unlike most other cases, Plaintiff concedes that he consented to the data practices at the heart of his kitchen-sink Complaint. While his core theory is that Mr. Cooper[1] discloses certain website interactions to third parties for advertising "without authorization," he admits he entered into "Privacy Contracts" agreeing that Mr. Cooper may do just that: "Third parties may [] use [tracking] technologies" for "[t]arget[ed] [a]dvertising," and Mr. Cooper may "share personal information, such as commercial info, internet activity, and inferences, with advertising and social media services to deliver personalized advertisements." Plaintiff was given the choice to opt out, but did not. Since the Complaint is premised entirely on "unauthorized" disclosures, it crumbles with Plaintiff's consent, as well as for other reasons as a matter of law.

First, Plaintiff lacks standing. Standing requires a concrete injury that is traceable to Mr. Cooper. Plaintiff establishes neither. He consented to the alleged disclosures and so suffered no injury, and he does not plausibly allege that any of his personal information was disclosed, let alone that he was harmed. His amended Complaint confirms this key flaw: he added that he (i) "interact[ed]" with public webpages, but not that he input any information; and (ii) input information to create an online account in 2021, but not that it was collected or disclosed. Plaintiff thus alleges no disclosure of his personal information, much less a "highly offensive" disclosure that could confer standing. He admits to receiving mortgage ads while shopping for one online, straining credulity as an injury, and does not allege those ads were traceable to Mr. Cooper.

Second, Plaintiff's claims for monetary relief are barred by the limitation-of-liability provision that he agreed to when creating an online account. That provision precludes recovery for

[1] Rocket Mortgage, LLC s/b/m Nationstar Mortgage LLC d/b/a Mr. Cooper ("Mr. Cooper").

damages "arising," as alleged here, "in connection with [Mr. Cooper's] [website] or use thereof."

Third, Plaintiff's common-law and statutory claims fail. His claims rest on generic allegations that non-personal data was shared with third parties for advertising, which might breach unidentified contracts, be negligent or intentional, or violate statutes. Plaintiff's consent forecloses any breach of duty, and his claims separately fail as a matter of law. Finally, most claims are time-barred to the extent they are premised on information allegedly provided when creating an account in 2021—nearly four years ago. The Complaint should be dismissed in its entirety, with prejudice.

## FACTUAL BACKGROUND

### A. Plaintiff Alleges Website Use, But Not Data Disclosure.

Plaintiff alleges that his mortgage was transferred to Mr. Cooper in 2021. ECF 26 ¶ 124. He alleges that he opened an online account with Mr. Cooper in the fall of 2021, and used the website to "research[] refinancing options," "review his account, manage his mortgage, and make payments." *Id.* ¶¶ 124–26. Specifically, the amended Complaint alleges:

- Plaintiff "interact[ed] with" Mr. Cooper's website by clicking on public, informational webpages, titled "calculators," "refinance," "buy a home," "rates," "apply," "help," "get cash from equity," "sign in," and "buying or selling a home." *Id.* ¶¶ 125–26. He does not contend to have input any information on those webpages, private or otherwise. *Id.*
- Plaintiff set up an account and input his "SSN, DOB, address, contact information, and more" one time in the fall of 2021. *Id.* ¶ 124.

Plaintiff alleges that Mr. Cooper's website has advertising trackers "to improve and to save costs on its marketing campaigns, improve its data analytics, attract new customers, and generate sales." *Id.* ¶ 5. But Plaintiff does not allege that the trackers existed throughout the relevant time, or on any particular webpage (including on the account-registration page in 2021). *See id.* ¶ 126.

Plaintiff also alleges that the trackers disclosed his "interactions" with the website to third parties like Meta, Google, and Microsoft. *Id.* ¶¶ 1, 136. Plaintiff alleges that the trackers could have shared information such as his customer status, browsing activities, or "c_user cookie to identify a logged-in Facebook account," and that he received ads concerning mortgages and real

estate listings, but not facts tying the ads to Mr. Cooper or its website. *Id.* ¶¶ 128, 137, 175.

### B. Plaintiff Agreed to Mr. Cooper's Alleged Data Practices.

Plaintiff concedes that he entered into "Privacy Contracts" with Mr. Cooper: "the 'Privacy Policy,' 'Consumer Privacy Notice,' and 'California Privacy Notice.'" *Id.* ¶ 78 & ECF 26-1–3. The website also contains a State-Specific Privacy Policy[2] (collectively, the "Privacy Policies"). Tayman Decl., Ex. A-2, Appx. 012–017. The Privacy Policies disclose the challenged practices:

**The Privacy Policy**, ECF 26-1; ECF 26 ¶¶ 80–84, discloses the website's use of trackers and potential collection and sharing of data for "[t]arget[ed] [a]dvertising":

- **"Information Collection":** "We collect nonpublic personal information," including information "we receive from you … such as your name, address, assets, [and] Social Security Number," "about your transactions," and financial information.
- **"Information Use And Disclosure":** "We may disclose some or all of the information that we collect … with non-affiliated companies or other organizations."
- **"Cookies And Other Technical Information":** "We may send 'cookies'" and "use tracking systems … which monitor your use of our Web sites" "for the purpose of transferring data," including browsing activities. "[I]f you choose to furnish [] our Web sites with [PII], [it] can be linked to the data stored in the cookies/Web beacons."
- **"Target Advertising":** "We may also use technologies to collect information about your online activities … to provide you with more relevant advertising …. Third parties may also use similar technologies to collect information about your online activities over time and across different third party sites, including your use of this Mr. Cooper website."

**The State-Specific Privacy Notice**, Tayman Decl., Ex. A-2, Appx. 012–017, discloses the website's potential collection and sharing of data "to deliver personalized advertisements":

- **"Do you have or use any of my personal information?":** "[W]e collect … information … on how you interact with our website," such as "whether you input your personal information into a webform to receive information about mortgage financing options," PII, "internet activity," and "commercial information like the products/services you've purchased from us." Certain "personal information" is used for "advertising."
- **"How do you collect personal information?":** "We collect information from … cookies, webforms, advertising networks, and other online tools and technology."
- **"Do you sell/share information?":** "In some circumstances, we share personal information, such as commercial info, internet activity, and inferences, with advertising

[2] This Court may consider the website's State-Specific Privacy Notice because the Complaint incorporates it by reference, ECF 26 ¶¶ 75–84, and is reflected as part of the Privacy Policy attached to the Complaint. ECF 26-1 at 1 (displaying a "State-Specific (/privacy/state)" portion of the Privacy Policy). *See Blackwood-Carter v. State Farm Lloyds*, 2021 WL 12286960, at *1 (N.D. Tex. Mar. 29, 2021).

and social media services to deliver personalized advertisements."

**<u>The Consumer Privacy Notice</u>**, ECF 26-2; ECF 26 ¶¶ 85–88, discloses how and why Mr. Cooper collects and shares customers' personal information:

- Collection occurs "when you … apply for a loan … give us your contact information … provide account information," etc.
- Sharing occurs "[f]or nonaffiliates to market to you."

**<u>The California Privacy Notice</u>**, ECF 26-3; ECF 26 ¶ 93, provides that Mr. Cooper may share personal information with nonaffiliated businesses:

- You may "restrict the sharing of personal and financial information with our affiliates … and outside companies we do business with."

The Privacy Policies also explain how to "opt out of" "cookies used for this online advertising" and "behavioral tracking." ECF 26-1–3; Tayman Decl., Ex. A-2, Appx. 015. Plaintiff does not allege he opted out.[3] *See* ECF 26.

### C. Plaintiff Agreed to Mr. Cooper's Terms, Which Limit Its Liability.

Plaintiff also agreed to the website's Terms, ECF 26 ¶¶ 28, 79 & nn. 7, 29, which direct users to "READ THESE TERMS AND CONDITIONS CAREFULLY." Tayman Decl., Ex. A-1, Appx. 005. In addition to "instruct[ing] customers to read the privacy policy for details regarding [Mr. Cooper's] privacy practices," *Beltran v. Nationstar Mortg. LLC*, 2026 WL 637337, at *2 (N.D. Cal. Mar. 6, 2026); they also include a Limitations Clause in bold and capitalized font:

> **Limitation Of Liability**
> IN NO EVENT WILL MR. COOPER BE LIABLE FOR ANY DIRECT, INDIRECT, PUNITIVE, INCIDENTAL, SPECIAL OR CONSEQUENTIAL DAMAGES, LOSSES OR EXPENSES … , ARISING IN CONNECTION WITH THIS SITE OR USE THEREOF …

Tayman Decl., Ex. A-1, Appx. 009–010. The Terms also require the application of Texas law. *Id.*; *see Beltran*, 2026 WL 637337, at *8 (noting "the governing Texas Law").[4]

[3] Mr. Cooper raised this omission in its first motion to dismiss. *See* ECF 25 at 4.
[4] Mr. Cooper cites cases outside of Texas only to the extent they interpret Plaintiff's claims.

## PROCEDURAL BACKGROUND

On August 18, 2025, Mr. Cooper filed motions to transfer venue and to dismiss. ECF 24, 25. Plaintiff filed the amended Complaint on September 8, 2025, ECF 26, which Mr. Cooper moved to dismiss on October 8, 2025, ECF 30. On March 6, 2026, the Court granted the motion to transfer, enforcing the forum selection clause in the Terms and holding that Mr. Cooper "show[ed] [that] the parties formed a valid and enforceable agreement through Plaintiff's creation of an account on the website." *Beltran*, 2026 WL 637337, at *8. That decision is the law of the case. *Active Zone of Am., LLC v. SDV (USA) Inc.*, 2008 WL 11387133, at *2 (S.D. Tex. Oct. 22, 2008) (transfer court's ruling that contract bound the parties was law of the case); *Int'l Marine, L.L.C. v. FDT, L.L.C.*, 619 F. App'x 342, 347 (5th Cir. 2015) (district court must interpret contract "in accordance with binding law of the case").

## ARGUMENT

### I. The Complaint Should Be Dismissed Under Rule 12(b)(1) for Lack of Standing.

A court must dismiss a complaint under Rule 12(b)(1) if a plaintiff does not establish Article III standing. *Laufer v. Mann Hosp., L.L.C.*, 996 F.3d 269, 271 (5th Cir. 2021). To discharge his burden, Plaintiff "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct … and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016), *as revised* (May 24, 2016). Because he does not allege any injury, nor one traceable to Mr. Cooper, the Complaint must be dismissed.

#### A. Plaintiff Does Not Allege He Suffered an Injury in Fact.

"To establish injury in fact, a plaintiff must show that he [] suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 339 (citation omitted). An injury is "particularized" if it "affect[s] the plaintiff in a personal and individual way," and "concrete" if it "actually exists."

*Cooper v. Nat'l Credit Adjusters, LLC*, 2022 WL 17656316, at *3 (N.D. Tex. Nov. 28, 2022), *report and recommendation adopted sub nom.* 2022 WL 17631533 (N.D. Tex. Dec. 13, 2022). Even for statutory claims, "a plaintiff [must] ha[ve] suffered a concrete harm." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 426 (2021). And for intangible harms, courts must assess whether the alleged injury has a "'close relationship' to a traditionally recognized harm"—in this case, intrusion upon seclusion and public disclosure of private facts. *Morrow v. W. Tex. Gas, Inc.*, 2025 WL 2816760, at *6–7 (W.D. Tex. Jan. 9, 2025) (quoting *TransUnion*, 594 U.S. at 424).

Here, Plaintiff's consent to the alleged use of trackers, *supra* pp. 3–4, negates any concrete injury. *Larroque v. First Advantage LNS Screening Sols., Inc.*, 2016 WL 4577257, at *5 (N.D. Cal. Sept. 2, 2016) (no concrete harm where plaintiff "consent[ed] to" disclosure); *Rodriguez v. Autotrader.com, Inc.*, 2025 WL 1085787, at *1–2 (C.D. Cal. Apr. 4, 2025) (no standing; plaintiff lacked reasonable expectation of privacy); *Xu v. Reuters News & Media Inc.*, 2025 WL 488501, at *5 (S.D.N.Y. Feb. 13, 2025) (same); *Morrison v. Weyerhaeuser Co.*, 119 F. App'x 581, 588–89 (5th Cir. 2004) (same; "nothing private was disclosed").

Nor does Plaintiff plausibly allege any disclosure of his personal information that would be recognized as a violation of the tort protecting against the disclosure of private information.[5] *See Morrow*, 2025 WL 2816760, at *6. *First*, although Plaintiff claims that he "interact[ed]" with public, informational webpages, he does not allege that he input any information, let alone any private information (or that there were trackers on those pages). ECF 26 ¶ 126; Tayman Decl., Ex. A-2, Appx. 012–017. Without identifying information that was actually collected, no injury can arise. *See, e.g.*, *Daghaly v. Bloomingdales.com, LLC*, 2024 WL 5134350, at *1 (9th Cir. Dec. 17, 2024) (no concrete injury; plaintiff did "not allege that she herself actually made any

[5] Public disclosure of private facts requires a plaintiff to show that "(1) publicity was given to matters concerning plaintiffs' private life, (2) the publication of which would be highly offensive to a reasonable person of ordinary sensibilities, and (3) the matter publicized was not of legitimate public concern." *Morrow*, 2025 WL 2816760, at *7.

communications that could have been intercepted"); *Mitchener v. Talkspace Network LLC*, 2025 WL 1822801, at *8 (C.D. Cal. June 27, 2025) (same; plaintiff did "not identify what personal information … if any, was captured"); *Maghoney v. Dotdash Meredith, Inc.*, 2026 WL 497402, at *5 (S.D. Cal. Feb. 23, 2026) ("[P]laintiff must identify the 'specific personal information she disclosed that implicates a protectable privacy interest'") (quoting *Mikulsky v. Noom, Inc*., 682 F. Supp. 3d 855, 864 (S.D. Cal. 2023)). *Second*, Plaintiff does not allege that any of the information he allegedly submitted when creating his account was plausibly collected or disclosed, or that there were trackers on the account creation webpage in 2021.[6] ECF 26 ¶¶ 124, 126.

And Plaintiff's generalized allegations about certain information the website *could collect*, ECF 26 ¶¶ 53–74, also do not plead an *actual injury* to Plaintiff. *Daghaly*, 2024 WL 5134350, at *1 ("general allegations about how [the website] intercepts website visitors' communications" do not remedy "sparse" "allegations about [the plaintiff's] own interactions"); *Garcia v. Blackhawk Network, Inc.*, 2026 WL 925028, at *6 (C.D. Cal. Apr. 1, 2026) (dismissing "vague and generalized allegations of the type of data the [tracking software] is capable of collecting" (citation omitted)); *Crano v. Sojern Inc.*, 2026 WL 1670136, at *4 (N.D. Cal. June 9, 2026) (dismissing complaint for lack of standing where "Plaintiff has not alleged actual injury to herself and instead alleges the 'trackers have the capability to use these pieces of information'").

And even if the generalized allegations about Mr. Cooper's website could confer standing, the website's alleged disclosure of browsing information does not plead an injury as a matter of law. The allegations are, at best, "most similar to a store clerk's observing shoppers in order to identify aisles that are particularly popular." *Popa v. Microsoft Corp.*, 153 F.4th 784, 786, 791 (9th Cir. 2025) (affirming dismissal for lack of "harm that is remotely similar to the 'highly offensive' interferences or disclosures … actionable at common law"). For instance, Plaintiff alleges the

[6] Plaintiff does not allege any account-registration information that he submitted. *Id*. ¶ 137.

collection and sharing of his customer status, ECF 26 ¶¶ 60, 137(a), but points to no disclosure and forgets that a mortgage is a matter of public record, *Weston v. Chase Mortg. Corp.*, 2014 WL 3942716, at *1 (S.D. Tex. Aug. 12, 2014); he alleges the sharing of IP addresses and browser information, ECF 26 ¶ 41, for which he has no reasonable expectation of privacy, *Xu*, 2025 WL 488501, at *1–5; and he alleges the collection of his "c_user cookie to identify a logged-in Facebook account," ECF 26 ¶ 137(i), but does not allege he was logged into Facebook at the time of browsing. Again, this type of information cannot give rise to a concrete injury. *Supra* pp. 5–7; *see Khamooshi v. Politico LLC*, 2025 WL 2822879, at *2 (N.D. Cal. Oct. 2, 2025) (rejecting "IP addresses, browser and device data," "browsing activity, geolocation data, device type, browser type, and 'device fingerprints'").[7]

And though Plaintiff lists various categories of supposed "harms"—*e.g.*, "[l]oss of privacy," "[u]nauthorized disclosure of" and "access to" his personal information, receipt of "advertisements," "[l]ost benefit of his bargain," "[e]mbarrassment, humiliation, frustration, and emotional distress," "[d]ecreased value" of his personal information, ECF 26 ¶¶ 140, 172, 248—each is vague and speculative at best, and the type of conclusory pleading that courts repeatedly reject. *See, e.g.*, *Shepherd v. Regan,* 2023 WL 8006413, at *3 (N.D. Tex. Nov. 17, 2023), *aff'd sub nom.* 2024 WL 3738475 (5th Cir. Aug. 9, 2024) (failure to "specify and quantify any potential losses … beyond mere conclusory statements that such losses would occur" was insufficient to establish standing); *Perlaki v. J.B. Poindexter & Co.*, 2025 WL 754503, at *3 (S.D. Tex. Mar. 10, 2025) (allegations of heightened risk of identity theft and fraud, lost time, possible future expenses,

[7] Courts interpreting similar claims have consistently held that the "mere 'collection of basic contact information'" or that "plaintiff[] merely visited the website," "are not concrete harms." *Mitchener v. CuriosityStream, Inc.*, 815 F. Supp. 3d 845, 850–51 (N.D. Cal. 2025) (citation omitted); *Magliocca v. United Healthcare Servs., Inc.*, 2026 WL 878694, at *4 (E.D. Cal. Mar. 31, 2026) ("button clicks, page visits, scrolls, session lengths, URLs, and IP addresses … resembles exactly the kind of 'non-sensitive browsing activity on a single website' that courts have repeatedly found insufficient to establish a concrete injury"); *Torres v. SeatGeek, Inc.*, 2026 WL 1495202, at *5 (N.D. Cal. May 28, 2026) (use of advertising trackers to capture IP addresses, browsing activity, and device data does not suffice under *Popa*); *Ingrao v. AddShoppers, Inc.*, 2024 WL 4892514, at *2 n.2 (E.D. Pa. Nov. 25, 2024) (collecting cases).

and diminished value of PII were "too speculative" to be a "concrete harm").

Plaintiff's sole factual allegation of receiving mortgage advertisements when he was actively searching for one, ECF 26 ¶¶ 128, 175—without any allegation of harm—does not plead an injury. *Xu*, 2025 WL 488501, at *3 (no standing absent allegation that plaintiff was "concretely harmed by any such advertising"); *Wooten v. BioLife Plasma Servs. L.P.*, 807 F. Supp. 3d 1139, 1145 (E.D. Cal. 2025) (allegation that trackers "have the *capability* to use … information … which could then result in targeted advertising" did not allege actual injury).

### B. Plaintiff Does Not Allege any Injury Traceable to Mr. Cooper.

Plaintiff also does not allege any injuries traceable to Mr. Cooper. Plaintiff's sole factual allegation of injury is that he received advertisements concerning mortgages and real estate at a time he was researching mortgages. ECF 26 ¶¶ 125, 128. But those ads cannot be traced to Mr. Cooper because Plaintiff fails to plausibly allege a connection between the ads and Mr. Cooper. This is particularly so here, where there are many reasons why Plaintiff may have received them—*e.g.*, as a result of researching real estate listings and mortgage financing with other lenders—and Plaintiff does not allege that he searched for refinance options exclusively through Mr. Cooper's website. See ECF 26. This renders any causal link speculative. *Camacho v. Torres*, 2023 WL 4602772, at *12 (S.D. Tex. June 6, 2023), *report and recommendation adopted*, 2023 WL 4602722 (S.D. Tex. July 18, 2023) (absent a concrete injury "causally connected to [defendants'] conduct, any injury would be speculative at best").[8]

Traceability is especially deficient here given the lack of particular allegations about Plaintiff's alleged visits to the website. Plaintiff fails to "nudge [his] claim 'across the line from

[8] Notably, Plaintiff's counsel has sued other mortgage lenders for use of the same and other trackers, further belying that any advertisements could be traceable to Mr. Cooper alone and no other plausible source. *Idris v. Lakeview Loan Servicing, LLC*, No. 3:25-cv-5087 (N.D. Cal. filed June 16, 2025); *Allison v. United Wholesale Mortg.*, No. 3:25-cv-5377 (N.D. Cal. filed June 26, 2025); *Allison v. PHH Mortg.*, No. 3:25-cv-5323 (N.D. Cal. filed June 25, 2025).

conceivable to plausible'" or to "rule out 'obvious alternative explanation[s].'" *Hikma Pharms. USA Inc. v. Amarin Pharma, Inc.*, 608 U.S. ---, 2026 WL 1593307, at *6 (June 4, 2026) (citations omitted); *Henderson v. Reventics, LLC*, 2024 WL 5241386, at *8 (D. Colo. Sept. 30, 2024) (mere "general allegation[s] … permit[] only 'a speculative chain of possibilities' linking [plaintiff's] alleged harm and [d]efendant['s] conduct"); *Fernandez v. Leidos, Inc.*, 127 F. Supp. 3d 1078, 1086 (E.D. Cal. 2015) (ads not traceable to defendant absent allegations of private information in a data breach); *Masterson v. IMA Fin. Grp., Inc.*, 2023 WL 8647157, at *4 (D. Kan. Dec. 14, 2023) (failure to allege standing based on actual misuse of data). Plaintiff's general allegations of visiting webpages, ECF 26 ¶ 126, do not establish a causal nexus to the receipt of ads. *Fernandez*, 127 F. Supp. 3d at 1087 (courts may not confer standing based on attenuated inferences).

## II. The Complaint Should Be Dismissed Under Rule 12(b)(6) for Failure to State a Claim.

A court must dismiss a complaint under Rule 12(b)(6) if a plaintiff fails to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). As with standing, a court accepts well-pled allegations as true, but need not accept legal conclusions or conclusory assertions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

### A. Plaintiff's Consent to the Alleged Data Practices Bars All of His Claims.

Plaintiff's claims are premised on allegations that Mr. Cooper disclosed his information to third parties "without … authorization." ECF 26 ¶¶ 1–16, 164–335; *see also id.* ¶ 146 (alleging putative classes of individuals whose information was disclosed "without authorization"). But through the Privacy Policies—which he alleges are "[c]ontracts," *id.* ¶ 78—Plaintiff agreed to Mr. Cooper's use of the trackers. The Privacy Policies explicitly state that Mr. Cooper may share the precise data at issue for advertising purposes. *Supra* pp. 3–4; *e.g.*, ECF 26-1 ("[t]hird parties may also use [tracking] technologies" for "[t]arget [a]dvertising"); Tayman Decl., Ex. A-2, Appx. 014 ("we share personal information, such as … internet activity, and inferences, with advertising and

social media services to deliver personalized advertisements”). Since Plaintiff consented to the alleged disclosures that premise all of his claims, those claims must fail. *Allison v. United Wholesale Mortg*., 2025 WL 3702863, at *5 (N.D. Cal. Dec. 21, 2025) (dismissing nearly identical complaint; plaintiffs did not “allege that they did not agree to the contents” of the privacy policy and terms that permitted use of their personal information); *Lakes v. Ubisoft, Inc.*, 777 F. Supp. 3d 1047, 1054 (N.D. Cal. 2025) (same; plaintiffs “consented to, and were informed of, the use of cookies” through privacy policies), *appeal docketed*, No. 25-2857 (9th Cir. May 2, 2025). This is particularly so here, where Plaintiff only alleges to have “searched and viewed publicly available [] information.” *Smith v. Facebook, Inc.*, 745 F. App’x 8, 9 (9th Cir. 2018) (affirming dismissal due to consent through terms and privacy policies).

### B. Plaintiff’s Claims Are Barred by the Terms’ Limitation-of-Liability Clause.

The Limitations Clause, which Plaintiff agreed to by opening an account, *supra* p. 4, bars all of his claims for monetary relief. Specifically, Plaintiff agreed that Mr. Cooper would not be liable for “damages, losses or expenses … arising in connection with this site or use thereof.” Tayman Decl., Ex. A-1, Appx. 009. Plaintiff’s claims arise from his use of the website, falling squarely within the Limitations Clause. *See e.g., Malik v. Cont’l Airlines, Inc.*, 369 F. App’x 588, 589 (5th Cir. 2010) (enforcing limitations clause where plaintiff was provided reasonable notice of the limitation); *Riddle v. X Corp*., 2025 WL 3452457, at *3–5 (W.D. Tex. July 11, 2025) (enforcing limitations clause). Such “limitation[s] clauses are generally valid and enforceable.” *Rothwell v. Marshall Creek Ranch, LLC*, 2025 WL 973939, at *5 (E.D. Tex. Feb. 11, 2025), *report and recommendation adopted*, 2025 WL 965754 (E.D. Tex. Mar. 31, 2025) (cleaned up).[9] The Limitations Clause therefore bars Plaintiff’s claims for monetary relief. *Williams v. X Corp*., 2026

[9] Indeed, “a party may contractually waive even constitutional or statutory rights, whether present or future” through a limitations clause, given the “‘strongly embedded public policy favoring freedom of contract.’” *Rothwell*, 2025 WL 973939, at *5–9 (citations omitted).

WL 885208, at *3 (N.D. Tex. Mar. 16, 2026*), report and recommendation adopted sub nom.* 2026 WL 885048 (N.D. Tex. Mar. 31, 2026) (enforcing limitations clause in terms and privacy policy).

### C. Plaintiff's Common-Law Claims Fail as a Matter of Law (Counts 1, 5, 6, 7).

#### 1. Plaintiff Does Not Plead any Breach of Contract (5).

Plaintiff's breach of express contract claim fails because he does not identify which contract was breached, let alone the provision. *See, e.g.*, *AdvoCare Int'l, L.P. v. Hardy*, 2010 WL 11618798, at *4 (N.D. Tex. Sept. 30, 2010) (dismissing claim where plaintiff "fails to indicate which of the two contracts" was breached). While Plaintiff pleads the agreements "[i]nclude[]" the Privacy Policies, ECF 26 ¶ 227, he does not allege the exact policy (or provision) breached.

Plaintiff also does not plausibly allege any breach. Though he generally alleges that Mr. Cooper "agreed to safeguard and protect" his information, *id.*, "unilateral statements of fact alleged as to the safety of customers' data do not create any contractual obligations." *In re Zappos.com, Inc.*, 2013 WL 4830497, at *3 (D. Nev. Sept. 9, 2013); *In re Shields Health Care Grp., Inc. Data Breach Litig.*, 721 F. Supp. 3d 152, 162 (D. Mass. 2024) ("broad statements on a public-facing website, without more, are insufficient to form an express contract with users"). Nor can Plaintiff allege any breach because he only pleads disclosures he agreed to under the Privacy Policies. *Capps v. Bullion Exch., LLC*, 2019 WL 4918682, at *2 (N.D. Okla. July 9, 2019) ("Bullion's 'Privacy Policy' does not, itself, constitute an express contract between Capps and Bullion"). And Plaintiff's failure to allege the specific information that was disclosed, *supra* pp. 6–7, further falters his claim. *Rand v. Eyemart Express, LLC*, 2024 WL 4376162, at *4 (N.D. Tex. Oct. 1, 2024) (no breach of contract claim absent allegations that personal information was collected).

Second, Plaintiff cannot plead an implied contract claim where the alleged implied promises are identical to the express contract. ECF 26 ¶ 227; *Electrostim Med. Servs., Inc. v. Health Care Serv. Corp.*, 614 F. App'x 731, 744 (5th Cir. 2015); *In re New Era Enters. Inc. Data

*Incident Litig.*, 2026 WL 303547, at *13 (S.D. Tex. Feb. 4, 2026) ("The mere provision of sensitive data in exchange for services is insufficient to create an implied-in-fact contract when the plaintiffs provided that data under an express contract"); *In re VeriSource Servs., Inc. Data Breach Litig.*, 2026 WL 1020531, at *13 (S.D. Tex. Feb. 6, 2026), *report and recommendation adopted*, 2026 WL 734067 (S.D. Tex. Mar. 16, 2026).

And like the express contract, Plaintiff alleges no details about the implied contract, such as what Mr. Cooper agreed to keep private. ECF 26 ¶¶ 225–31. Alleging the existence of an implied contract, without more, is insufficient. *See HDI Glob. Specialty SE v. Coreslab Structures (Tex.) Inc.*, 2021 WL 1226561, at *3 (W.D. Tex. Mar. 31, 2021), *report and recommendation adopted*, 2021 WL 2843842 (W.D. Tex. May 19, 2021) (implied contracts are "evidenced by the parties' conduct and course of dealing" (citations omitted)); *Logan v. Marker Grp., Inc.*, 2024 WL 3489208, at *8 (S.D. Tex. July 18, 2024) (plaintiffs must show "'evidence from which one could plausibly infer that defendant intended to contractually bind itself to a general standard of reasonable care'" or "'any particular cybersecurity standard or protocol'" (citation omitted)).

**2. The Unjust Enrichment Claim Should Be Dismissed (6).**

Plaintiff's unjust enrichment claim fails as a matter of law. First, unjust enrichment is not a cause of action. *See Hancock v. Chi. Title Ins. Co.*, 635 F. Supp. 2d 539, 560 (N.D. Tex. 2009). Second, Plaintiff's claim is duplicative of his contract claim. *Compare* ECF 26 ¶ 234 (Plaintiff conferred a benefit when Mr. Cooper disclosed his information), *with id.* ¶ 230 (Mr. Cooper breached contracts by doing the same). Because Plaintiff does not plead those contracts are invalid, the claim must be dismissed. *Er Addison, LLC v. Aetna Health, Inc.*, 2026 WL 948511, at *4 (N.D. Tex. Apr. 8, 2026) (dismissing claim where plaintiffs alleged an express contract); *Curtis v. Cerner Corp.*, 621 B.R. 141, 177 (S.D. Tex. 2020) (same). Third, any data sharing is not unjust because Plaintiff consented. *Supra* pp. 3–4. That too requires dismissal. *Craven v. Canal Barge Co.*, 135

F. App'x 632, 635 (5th Cir. 2004) (consent "obviates the … remedy of unjust enrichment").

**3. The Breach of Confidence Claim Is Insufficiently Pled (7).**

Plaintiff's "breach of confidence claim also warrants dismissal because it is not a cause of action recognized by Texas law." *Logan*, 2024 WL 3489208, at *11; *see also In re Cap. One Consumer Data Sec. Breach Litig.*, 488 F. Supp. 3d 374, 409 n.21 (E.D. Va. 2020) (same). Even if Texas law recognized a breach of confidence claim, it would make no sense here. At its core, the claim seeks to hold the recipient of a novel idea liable for intentionally disclosing a novel, confidential innovation or idea. *Kleck v. Bausch & Lomb, Inc.*, 145 F. Supp. 2d 819, 827 (W.D. Tex. 2000). It is intended to "mirror[]" a misappropriation of trade secrets claim. *See, e.g.*, *Richter v. Carnival Corp.*, 2019 WL 5894213, at *7 (N.D. Tex. Nov. 12, 2019); *Sikes v. McGraw-Edison Co.*, 671 F.2d 150, 151 (5th Cir. 1982) (*citing Hyde Corp. v. Huffines*, 314 S.W.2d 763 (Tex. 1958)). Plaintiff must allege (1) a trade secret and (2) acquisition of such secret through breach of confidence or improper means. *GlobeRanger Corp. v. Software AG*, 27 F. Supp. 3d 723, 747–48 (N.D. Tex. 2014), *aff'd*, 836 F.3d 477 (5th Cir. 2016). Plaintiff alleges no such thing, necessitating dismissal. *See Gorman v. Ethos Grp. Inc.*, 2024 WL 1257493, at *4 (N.D. Tex. Mar. 25, 2024) (dismissing claim where, "[a]t best, Plaintiffs allege only that that 'sensitive' data was accessed").

**4. The Negligence Claim Should Be Dismissed (1).**

Plaintiff cannot plead the elements of a negligence claim: (i) a duty; (ii) breach; (iii) proximate cause; and (iv) damages. *Hanan v. Crete Carrier Corp.*, 2020 WL 42269, at *2 (N.D. Tex. Jan. 3, 2020). First, as discussed *supra* pp. 6–7, Plaintiff does not allege *what* he provided to Mr. Cooper and only generally alleges information the website *could collect*. "Without well-pled factual allegations establishing that [Mr. Cooper] disclosed *Plaintiff's* personal financial information, Plaintiff cannot plead the necessary elements of his [negligence] claim[]." *Stevens v. TD Bank, N.A.*, 2025 WL 1779164, at *6 (D.N.J. June 27, 2025) (dismissing claim); *Bruce v.*

*Nationstar Mortg.*, 2014 WL 2587527, at *5 (N.D. Tex. May 20, 2014), *report and recommendation adopted*, 2014 WL 2593240 (N.D. Tex. June 10, 2014) (same).

Second, the Complaint alleges intentional conduct, not negligence, and must be dismissed for that reason. Plaintiff's key claim is that Mr. Cooper intentionally installed trackers on its website to collect and disclose Plaintiff's information. *E.g.*, ECF 26 ¶¶ 3, 31 (Mr. Cooper "knowingly and secretly configur[ed]" and "purposely and secretly installed" trackers).[10] Because "the allegations of intentional and knowing conduct are inconsistent with the concept of negligence," the claim must be dismissed. *Strojnik v. Landry's Inc.*, 2019 WL 7461681, at *6 (S.D. Tex. Dec. 9, 2019), *report and recommendation adopted sub nom.* 2020 WL 42454 (S.D. Tex. Jan. 2, 2020); *Tutus, LLC v. JLG Indus., Inc.*, 2021 WL 2954423, at *6 (S.D. Tex. June 21, 2021), *report and recommendation adopted,* 2021 WL 2954067 (S.D. Tex. July 14, 2021). Even if the Complaint plausibly alleged negligent conduct because Plaintiff does not sufficiently allege "what information the [trackers] collected, [there is] no basis to conclude that a duty existed to safeguard [it]." *Santoro v. Tower Health*, 2024 WL 1773371, at *5 (E.D. Pa. Apr. 24, 2024).

Third, Plaintiff does not allege any cognizable damages. He generally alleges damages in the form of "advertisements reflecting private financial information"; "diminution in value" of his data; "embarrassment, humiliation, frustration, and emotional distress"; "lost time and money"; "value" in keeping information "private"; "increased risk of future harm"; and "other injuries." ECF 26 ¶ 175. To start, such conclusory allegations of harm do not suffice. *Smith v. USAA Ins. Agency, Inc., of Tex.*, 2022 WL 892699, at *3 (N.D. Tex. Mar. 10, 2022), *report and recommendation adopted*, 2022 WL 891441 (N.D. Tex. Mar. 25, 2022) (dismissing negligence claim). Regardless, Plaintiff does not allege any such instances of harm. *Supra* pp. 5–9.

---

[10] In fact, Plaintiff's wiretapping claims require intent. Cal. Penal Code §§ 631(a), 632(a); 18 U.S.C. § 2511(1)(a), (3)(a) (prohibiting "intentional" conduct); *Manier v. Triple Lift Inc.*, 2026 WL 1295546, at *3 (C.D. Cal. Apr. 15, 2026) ("CIPA liability only extends to willful or intentional conduct").

Nor, in any event, do they constitute actual damages as a matter of law. *Perlaki*, 2025 WL 754503, at *7 (rejecting allegations of lost time, possible future expenses, and diminishment in value of PII and dismissing negligence claim); *Lowman v. Enter. Fin. Grp., Inc.*, 2025 WL 2994737, at *6 (N.D. Tex. Aug. 12, 2025), *report and recommendation adopted*, 2025 WL 2778380 (N.D. Tex. Sept. 30, 2025) (same where "Plaintiff baldly asserts mere legal conclusions that Defendant's conduct … proximately resulted in damages," such as risk of fraud and identity theft, lost time, and diminution in value of data); *B.K. v. Eisenhower Med. Ctr.*, 721 F. Supp. 3d 1056, 1069 (C.D. Cal. 2024) (same based on unwanted ads, wrongful disclosure, and diminution in value of data); *Pruchnicki v. Envision Healthcare Corp.*, 845 F. App'x 613, 614 (9th Cir. 2021) (affirming dismissal; "lost time," "emotional distress," and "diminution of the value of her [] information" are not compensable damages).

**D. Plaintiff's California Statutory Claims Fail (Counts 2–4, 8–10).**

**1. The Choice-of-Law Provision Bars Plaintiff's Statutory Claims (All).**

Plaintiff expressly agreed, when creating an account, that Texas law applies to any claims relating to his "use of the Mr. Cooper websites." ECF 26 ¶ 123; Tayman Decl., Exs. A-1–2, Appx. 004–017; *see Beltran*, 2026 WL 637337, at *8 (noting "the governing Texas Law"). Because Texas law applies, the California statutory claims are barred. *See, e.g.*, *Great Lakes Reinsurance (UK) PLC v. Tico Time Marine LLC*, 2011 WL 1044154, at *4 (S.D. Tex. Mar. 16, 2011) (enforcing New York choice-of-law provisions and dismissing Texas statutory claim without leave to amend); *Maynard v. PayPal, Inc.*, 2019 WL 3552432, at *5 (N.D. Tex. Aug. 5, 2019) ("As a result of the application of Delaware law, plaintiffs cannot maintain claims under the Texas statutes"); *Heinz v. Amazon.com, Inc.*, 760 F. Supp. 3d 1183, 1188 (W.D. Wash. 2024) (dismissing CIPA claim because Washington law applied under terms of use). However, even if the California statutory claims were not barred, Plaintiff does not allege a viable claim.

### 2. Plaintiff's CDAFA Claim Fails (2).

Plaintiff fails to plead a claim under California's Computer Data Access and Fraud Act ("CDAFA"), Cal. Penal Code § 502. First, Plaintiff does not allege that Mr. Cooper accessed his computers "without permission," as required. Cal. Penal Code § 502(c). CDAFA—an "anti-hacking statute"—"prohibit[s] the unauthorized use of any computer system for improper or illegitimate purpose." *N.Z. v. Fenix Int'l Ltd.*, 2025 WL 3627591, at *14 (C.D. Cal. Dec. 12, 2025) (citing Cal. Penal Code § 502(c)). A defendant's system access must be "without permission by overcoming technical or code-based barriers." *Id.* (cleaned up). But Plaintiff merely parrots the statutory language that Mr. Cooper accessed his information "without permission." ECF 26 ¶¶ 183–84; *Gonzales v. Uber Techs., Inc.*, 305 F. Supp. 3d 1078, 1090 (N.D. Cal. 2018) (dismissing CDAFA claim). And Plaintiff concedes he voluntarily provided through the website, not that Mr. Cooper accessed his computer without permission. *E.g.*, ECF 26 ¶¶ 4, 123–26, 133–34.

Second, Plaintiff does not allege any "damage or loss." Cal. Penal Code § 502(e)(1). "[L]oss" includes "costs related to fixing a computer, lost revenue, or other consequential damages incurred due to an interruption of computer services." *Pratt v. Higgins*, 2023 WL 4564551, at *9 (N.D. Cal. July 17, 2023). Instead, Plaintiff alleges a lack of data protection, diminution in the value of his data, and Mr. Cooper's alleged benefit, ECF 26 ¶ 189, which do not suffice. *See Cottle v. Plaid Inc.*, 536 F. Supp. 3d 461, 488 (N.D. Cal. 2021) (loss of the "right to control the[ ] data," "value of the[] data," and "right to [data] protection" is not "damage or loss"); *Torres*, 2026 WL 1495202, at *7 (dismissing CDAFA claim); *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1082 (N.D. Cal. 2023) (diminution in data's value was not a loss or damage). Regardless, Plaintiff offers no non-conclusory allegation of damage or loss.[11]

[11] Plaintiff also does not allege anything unjust about any retention of a benefit given his consent. *In re Zoom Video Commc'ns Inc. Priv. Litig.*, 525 F. Supp. 3d 1017, 1044 (N.D. Cal. 2021).

### 3. Plaintiff's UCL Claim Fails (3).

Plaintiff's California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq*., claim fails for similar reasons. To have statutory standing, Plaintiff must establish that he "(1) suffered an injury in fact and (2) lost money or property as a result of the unfair competition." *Birdsong v. Apple, Inc.*, 590 F.3d 955, 959 (9th Cir. 2009). Again, he alleges no injury or lost money. ECF 26 ¶ 213; *see Hazel v. Prudential Fin., Inc.*, 2023 WL 3933073, at *6 (N.D. Cal. June 9, 2023) (dismissing UCL claim; "just because Plaintiffs' data is valuable in the abstract, and [defendant] might have made money from it, does not mean that Plaintiffs have 'lost money or property'"); *Bogard v. TikTok Inc*., 2025 WL 3637035, at *14 (N.D. Cal. Dec. 15, 2025) (same), *appeal docketed sub nom. Bogard v. Alphabet Inc.*, No. 26-246 (9th Cir. Jan. 13, 2026).

Nor is Plaintiff's claim of a "property interest," ECF 26 ¶ 201, cognizable as a matter of law. *In re Facebook Priv. Litig*., 791 F. Supp. 2d 705, 714 (N.D. Cal. 2011) (dismissing UCL claim; "personal information does not constitute property" under UCL), *aff'd*, 572 F. App'x 494 (9th Cir. 2014); *Isgur v. Meta Platforms, Inc*., 2026 WL 194640, at *9 (N.D. Cal. Jan. 26, 2026) (no UCL claim; plaintiff must allege an intention "to participate in the market for their data" or "derive [its] economic value") (cleaned up).

The UCL claim also should be dismissed because Plaintiff does not plead the lack of an adequate remedy at law. ECF 26 ¶¶ 192–214. Nor can he, as his other claims seek one. *Hamm v. Mercedes-Benz USA, LLC*, 2022 WL 913192, at *2 (N.D. Cal. Mar. 29, 2022) (dismissing UCL claim; "the availability of an adequate legal remedy is clear from the face of the [complaint]").

### 4. Plaintiff Does Not State a Claim Under the CCPA (4).

Plaintiff's claim under the California Consumer Privacy Act ("CCPA"), Cal. Civ. Code § 1798.100 *et seq.*, fails too. First, Plaintiff admits he did not send the required pre-suit notice. ECF 26 ¶ 223 ("Plaintiff sent Defendant notice … after the date of this filing"). But Plaintiff may only

bring a claim if he provides notice "*prior to initiating any action*." Cal. Civ. Code § 1798.150(b) (emphasis added). Failure to comply with the notice period compels dismissal. *Id.*; *Griffey v. Magellan Health Inc.*, 2022 WL 1811165, at *6 (D. Ariz. June 2, 2022) (dismissing CCPA claim); *Garcia v. J.P. Morgan Chase, N.A.*, 2026 WL 562136, at *3–4 (C.D. Cal. Feb. 25, 2026) (same).

Second, Plaintiff alleges no violation of § 1798.150—the only CCPA provision with a private right of action. Cal. Civ. Code § 1798.150(c). He cites § 1798.115, ECF 26 ¶ 217, which carries no such right. Thus, the CCPA claim must be dismissed. *Hayden v. Retail Equation, Inc.*, 2022 WL 2254461, at *4–5 (C.D. Cal. May 4, 2022) (dismissing CCPA claims with prejudice), *on reconsideration*, 2022 WL 3137446 (C.D. Cal. July 22, 2022).

Likewise, Plaintiff's generalized allegations that Mr. Cooper breached "Cal. Civ. Code § 1798.100, *et seq.*," ECF 26 ¶ 216, do not suffice, as Plaintiff does not allege any "unauthorized access and exfiltration, theft, or disclosure" of "nonencrypted and nonredacted personal information" due to a "violation of the duty to implement and maintain reasonable security procedures and practices." Cal. Civ. Code § 1798.150(a), (c). Plaintiff admits that the trackers were installed due to a business decision to "improve and to save costs on its marketing campaigns, improve its data analytics, attract new customers, and generate sales," ECF 26 ¶ 5, which is inconsistent with data being disclosed due to inadequate security. *See Hayden*, 2022 WL 2254461, at *5 (dismissing CCPA claim; the disclosure "was a business decision"); *Little Seeds Children's Ctr., Inc. v. Citibank, N.A.*, 815 F. Supp. 3d 891, 904 (N.D. Cal. 2025) (same; no allegation that "any access or exfiltration was the result of Defendant's violation of [§ 1798.150]").[12]

**E. Plaintiff's ECPA and CIPA Claims Fail (Counts 8–12).**

As a matter of law, the Wiretap Act ("ECPA"), 18 U.S.C. § 2510 *et seq.*, and California

[12] Plaintiff alleges that "Mr. Cooper is subject to" the Gramm–Leach–Bliley Act, 15 U.S.C. § 6801 *et seq*. ("GLBA"). ECF 26 ¶ 109. The CCPA expressly carves out an exemption for information subject to the GLBA (Cal. Civ. Code § 1798.145(e)), thus, Plaintiff cannot assert that Mr. Cooper failed to comply with the CCPA.

Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 630 *et seq.*, claims, ECF 26 ¶¶ 251–335, fail.

**1. Plaintiff's Consent Bars His CIPA and ECPA Claims (All).**

Plaintiff's consent to the alleged tracking, *supra* pp. 3–4, is dispositive of his CIPA and ECPA claims. Cal. Penal Code §§ 631(a), 632(a), 638.51(a) (prohibiting acts "without the [parties'] consent"); 18 U.S.C. § 2511(2)(d) (no liability where a party "has given … consent"), § 2511(3)(b)(ii) (permitting disclosure "with the [originator's] lawful consent"). Courts routinely dismiss wiretapping claims on this basis. *Rousset v. AT&T Inc.*, 2015 WL 9473821, at *8 (W.D. Tex. Dec. 28, 2015) (dismissing ECPA claim), *report & recommendation adopted as modified*, 2016 WL 4249164 (W.D. Tex. Feb. 29, 2016); *Lakes*, 777 F. Supp. 3d at 1054 (dismissing CIPA and ECPA claims); *Allison*, 2025 WL 3702863, at *5-6 (dismissing similar claims).

The ECPA claims also fail because the ECPA is a one-party consent statute, 18 U.S.C. § 2511(2)(d), and Mr. Cooper—as a party to the communications, ECF 26 ¶¶ 4, 46, 58, 285, 307, 312—consented to the alleged disclosures. *Brown v. Learfield Commc'ns, LLC*, 2024 WL 3676709 (W.D. Tex. June 27, 2024) (dismissing § 2511(1) claim under party exception); *Rand v. Eyemart Express, LLC*, 2025 WL 1519726 (N.D. Tex. May 27, 2025) (same).

**2. The CIPA (§ 631(a)) and ECPA Claims Lack "Contents" (8, 11–12).**

Plaintiff's CIPA (§ 631(a)) and ECPA claims also fail absent an alleged disclosure of the "contents" of his communication. Although the amended Complaint conclusorily pleads a disclosure of the "contents," ECF 26 ¶¶ 259, 261, 263, 309–22, 324–34, they are nothing more than non-actionable record information.[13] The analysis of whether information is the "contents" of a communication is the same under CIPA and ECPA. *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 127 (N.D. Cal. 2020); *Ingrao*, 2024 WL 4892514, at *7. "[C]ontents" means "information …

[13] Plaintiff's § 631(a) claim seems to only allege that Mr. Cooper violated clause four by aiding and abetting a violation of clause two ("read[ing], or attempt[ing] to read, or to learn the contents or meaning" of a communication). ECF 26 ¶¶ 258–73.

concerning the substance, purport, or meaning of a communication," and excludes "record information." *Nguyen v. Abbott Lab'ys, Inc.*, 2026 WL 579206, at *6 (N.D. Ill. Mar. 2, 2026) (quoting *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106–07 (9th Cir. 2014)). "[R]ecord information" includes "the characteristics of the message" such as "a … name, address, and subscriber identity" or "information … infer[red] from a user's interaction with a webpage." *Id.*; *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1082–83 (C.D. Cal. 2021).

Plaintiff's allegations that the trackers may have disclosed his "interactions"—including customer status, browsing activities, and "[r]efinancing options," ECF 26 ¶¶ 136–37—describe quintessential "record information." *E.g.*, *Mikulsky v. Bloomingdale's, LLC*, 713 F. Supp. 3d 833, 845 (S.D. Cal. 2024) ("button clicks, mouse movements, scrolling," "page navigation, changes to visual elements in the browsers, [and] network requests" are record information); *Nguyen*, 2026 WL 579206, at *6 (record information included fact "that a form was completed[ and] a button … was clicked"). The other alleged disclosures—*e.g.*, submitting an application, requesting a quote, or buying a home, ECF 26 ¶ 137—do not allege that any specific content was disclosed, likely because Plaintiff does not allege that he did *any* of those things. *Id.* ¶¶ 124–26. Rather, Plaintiff merely alleges that he "researched refinancing options" and "interact[ed]" with public webpages. *Id.* But again, website interactions through "button clicks" are not "contents." *Mikulsky*, 713 F. Supp. 3d at 845; *King v. Hard Rock Cafe Int'l (USA), Inc.*, 2025 WL 1635419, at *1, *3–4 (E.D. Cal. June 9, 2025). And while Plaintiff does not allege any disclosure of his account-registration information, customer information too is not content. *Nguyen*, 2026 WL 579206, at *6 (alleged interception of address, contact information, and user-specific values did not plead contents); *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1092–93 (N.D. Cal. July 18, 2022) ("customer information such as a [] name, address, and subscriber number … is record information"). The CIPA (§ 631(a)) and ECPA claims must be dismissed.

### 3. The CIPA (§ 631(a)) and ECPA Claims Lack Interception (8, 11–12).

The CIPA (§ 631(a)) and ECPA claims also fail because they do not plead any interception in transit. Cal. Penal Code § 631(a); *Nienaber v. Overlake Hosp. Med. Ctr.*, 733 F. Supp. 3d 1072, 1094 (W.D. Wash. 2024) (ECPA §§ 2511(1) and 2511(3) require an intentional interception). For a communication to be "intercepted," "acquisition must occur contemporaneously with transmission." *Beasley v. Greenlee*, 2024 WL 3851382, at *9 (N.D. Tex. July 25, 2024), *report and recommendation adopted*, 2024 WL 3851599 (N.D. Tex. Aug. 16, 2024); *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002) (same).

Plaintiff does not allege any such interception. Though he alleges Mr. Cooper aided third parties in intercepting communications, *supra* note 11, any such interception is not "in transit" because Plaintiff concedes that Mr. Cooper received the information and then sent it to a third party. ECF 26 ¶¶ 61–74 (Mr. Cooper sends information after receipt); *id.* ¶ 258 (Mr. Cooper "record[ed]" communications "and then transmitted" it); *see Boulton v. Community.com, Inc.*, 2025 WL 314813, at *1 (9th Cir. Jan. 28, 2025) (affirming dismissal because the defendant "could have only read … [the] text after it was received"); *Swarts v. Home Depot, Inc.*, 689 F. Supp. 3d 732, 746 (N.D. Cal. 2023) (same due to "notion that [the third party] receives the information '*after* the chat reaches'" the website owner).

### 4. The CIPA (§ 631(a)) Claim Fails, as Plaintiff Does Not Allege that Mr. Cooper "Aided" or "Conspired" with Third Parties (8).

Plaintiff's CIPA (§ 631(a)) claim also fails because he does not allege facts to show Mr. Cooper "aided" third parties to commit an underlying violation. ECF 26 ¶¶ 258–68. "[A]iding" a violation requires showing that Mr. Cooper had "both knowledge of the conduct that will violate the statute and a purpose of aiding, agreeing with, or employing the third party to commit those acts." *Smith v. YETI Coolers, LLC*, 754 F. Supp. 3d 933, 942 (N.D. Cal. 2024). Here, Plaintiff's conclusory allegations that Mr. Cooper "aided" third parties' interceptions, ECF 26 ¶¶ 258–68, do

not plausibly allege that Mr. Cooper knew of any interception, let alone intended to assist them in violating CIPA; and any such allegations fly in the face of the Complaint's acknowledgment of the Privacy Policies, which disclose the sharing of such information. *See, e.g.*, *Smith*, 754 F. Supp. 3d at 943 ("conclusory allegations" that defendant was "aware of the purposes for [the third party's] collect[ion]" and that defendant "assists [the third party]" were insufficient to plead aiding and abetting a wiretap); *Rodriguez v. Ford Motor Co.*, 722 F. Supp. 3d 1104, 1124 (S.D. Cal. 2024) (dismissing CIPA claim absent allegations "that Defendants knew [the third party's] conduct constituted a breach of some duty," even if they knew about the alleged capture of information).

**5. The CIPA (§ 632(a)) Claim Lacks Eavesdropping or Recording (9).**

Plaintiff also cannot plead that Mr. Cooper "eavesdrop[ped] upon or record[ed]" a "communication," as required to state a CIPA (§ 632(a)) claim. Cal. Penal Code § 632(a). Plaintiff's allegations that Mr. Cooper aided and abetted a third party in eavesdropping, ECF 26 ¶¶ 277–88, are again insufficient absent allegations that Mr. Cooper had knowledge of the eavesdropping and provided substantial assistance in that eavesdropping. *Smith*, 754 F. Supp. 3d at 944 (dismissing § 632 claim asserting aiding-and-abetting liability).

The § 632 claim also fails because Plaintiff does not allege any "confidential communication" for which Plaintiff had "an objectively reasonable expectation that the conversation is not being overheard or recorded." *Rodriguez v. Google LLC*, 2021 WL 2026726, at *7 (N.D. Cal. May 21, 2021) (citations omitted). Plaintiff's allegations of non-confidential "[i]nternet communications" for which a website user does "not have an objectively reasonable expectation of confidentiality" requires dismissal. *Yoon v. Meta Platforms, Inc.*, 2024 WL 5264041, at *6 (N.D. Cal. Dec. 30, 2024); *Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *3 (N.D. Cal. Oct. 23, 2019) (dismissing § 632 claim based on internet browsing activity and form field entries); *Swarts*, 689 F. Supp. 3d at 747 (same where plaintiff claimed her "confidential"

internet chat conversation was recorded by third-party provider); *King*, 2025 WL 1635419, at *6 (same based on online booking information).

**6. The CIPA (§ 638.51) Claim Fails (10).**

Plaintiff's CIPA (§ 638.51) claim also fails for several reasons. First, Plaintiff alleges that that trackers are "pen registers" and "trap and trace devices" because they "capture and transmit addressing information, including Plaintiff's … IP addresses and other unique identifiers." ECF 26 ¶¶ 298, 300–01. However, Plaintiff does not actually allege that the trackers collected or transmitted his IP address or any other "addressing information," *id.* ¶ 137, or that trackers on Mr. Cooper's website could do so, *id.* ¶¶ 53–74. Again, Plaintiff only alleges the collection of customer status, browsing information, and a "c_user cookie.'" *Id.* ¶ 137; *see also id.* ¶¶ 259, 261, 263, 316–27 (alleging the trackers disclose the "contents"). In any case, an IP address cannot sustain a § 638.51 claim. *Sanchez v. Cars.com Inc.*, 2025 WL 487194, at *3 (Cal. Super. Ct. Jan. 27, 2025); *Casillas v. Transitions Optical, Inc.*, 2024 WL 4873370, at *4 (Cal. Super. Ct. Sept. 9, 2024).[14]

Second, the § 638.51 claim fails because "'pen register' and 'tra[p] and trace devices' refers to devices or processes that are used to record or decode dialing, routing, addressing, or signaling information from telephone numbers, *not internet communications such as websites*." *Sanchez*, 2025 WL 487194, at *3 (emphasis added); *Casillas*, 2024 WL 4873370, at *2 ("Section 638.50 does not address the privacy rights of Internet users.").

**7. The ECPA (§ 2511(3)(a)) Claim Fails (12).**

The ECPA, § 2511(3)(a) claim also fails because Plaintiff does not, and cannot, plead facts that Mr. Cooper is a provider of an electronic communication service ("ECS"). An ECS is "any

[14] Courts have recognized the "futility of" § 638.51 claims: if a tracker "collects content information … § 638.50 does not apply"; but if it "collects information regarding the 'metadata' of the communication, Plaintiff's right to privacy is not invaded because he has no expectation of privacy as to that type of data." *CuriosityStream*, 815 F. Supp. 3d at 849, 852; *Kishnani v. Royal Caribbean Cruises Ltd.*, 2025 WL 1745726, at *5 (N.D. Cal. June 24, 2025) (same); *see also Xu*, 2025 WL 488501, at *1–5.

service which provides to users thereof the ability to send or receive wire or electronic communications." 18 U.S.C. § 2510(15). Mr. Cooper does not provide such services. *In re Broadcast.com, Inc.*, 2001 WL 36050382, at *2 (E.D. Tex. Dec. 12, 2001) (rejecting argument that defendant was an ECS provider because it "operated a [w]ebsite that enabled the plaintiff to send e-mails to [defendant] and receive programming in return"); *Crowley v. CyberSource Corp.*, 166 F. Supp. 2d 1263, 1270 (N.D. Cal. 2001) (rejecting arguments that Amazon was an ECS provider because it "receives electronic communications from customers," and "without recipients such as Amazon.com, users would have no ability to send electronic information").

### F. Plaintiff's Claims Are Time-Barred (Counts 1–2, 4, 6–12).

Finally, nearly all of Plaintiff's claims are time-barred to the extent they are premised on his alleged input of information when he "set up an account with Mr. Cooper in the fall of 2021." ECF 26 ¶ 124. Although Plaintiff does not allege any disclosure of that information, *id.* ¶ 137, he did not file his initial complaint until May 2025—more than three years after creating an account. ECF 1. Therefore, all but two of his claims (UCL and breach of contract) are time-barred and must be dismissed with prejudice.[15] *See, e.g.*, *Urbanski v. Blunck*, 2023 WL 2801212, at *2 (N.D. Tex. Apr. 5, 2023) (dismissing claims as time-barred); *Gauss v. PSP Dallas LP*, 2022 WL 1813603, at *3 (N.D. Tex. June 2, 2022) (same).[16]

## CONCLUSION

For all of these reasons, the Court should dismiss the Complaint with prejudice.

---

[15] One year for CIPA (Cal. Civ. Proc. Code ("CCP") § 340); two for ECPA, negligence, and unjust enrichment (18 U.S.C. § 2520; Tex. Civ. Prac. & Rem. Code § 16.003); three for CDAFA and CCPA (Cal. Penal Code § 502(e)(5); CCP § 338); and four for California UCL and breach of contract (Cal. Bus. & Prof. Code § 17208; TCPRC § 16.004).

[16] It is no excuse to claim that Plaintiff "could not with due diligence have discovered" the use of trackers, ECF 26 ¶ 143, because their use was specifically disclosed in the Privacy Policies that he agreed to and could have easily read.

Dated: June 15, 2026

Respectfully submitted,

By: */s/ W. Kyle Tayman*

W. KYLE TAYMAN (*pro hac vice*)
*KTayman@goodwinlaw.com*
**GOODWIN PROCTER LLP**
1900 N Street, N.W.
Washington, DC 20036
Tel.: +1 202 346 4000
Fax: +1 202 346 4444

REBECCA L. TARNEJA (*pro hac vice*)
*RTarneja@goodwinlaw.com*
**GOODWIN PROCTER LLP**
601 South Figueroa Street, Suite 4100
Los Angeles, California 90017
Tel.: +1 213 426 2500
Fax: +1 213 623 1673

THOMAS G. YOXALL (No. 00785304)
*Tom.Yoxall@troutman.com*
**TROUTMAN PEPPER LOCKE**
2200 Ross Avenue, Suite 2800
Dallas, Texas 75201
Tel.: +1 214 740 8000
Fax: +1 214 740 8800

*Attorneys for Defendant Mr. Cooper*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 15, 2026 a copy of the foregoing was served by electronic means via the Court's CM/ECF System on all counsel registered to receive electronic notices.

*/s/ W. Kyle Tayman*
W. Kyle Tayman