**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| MARTIN BELTRAN, individually and on behalf of all others similarly situated,<br><br>Plaintiff<br><br>v.<br><br>NATIONSTAR MORTGAGE LLC d/b/a MR. COOPER,<br><br>Defendant. | Case No.: 3:26-cv-00744-X (N.D. Tex.)<br>Former Case No. 3:25-cv-04412-JSC (N.D. CA)<br><br>**PLAINTIFF'S OPPOSITION TO MR. COOPER'S AMENDED MOTION TO DISMISS** |

**PLAINTIFF'S OPPOSITION TO MR. COOPER'S AMENDED MOTION TO DISMISS**

# TABLE OF CONTENTS


**INTRODUCTION** ... 1

**FACTUAL AND PROCEDURAL BACKGROUND** ... 1

**STANDARD OF REVIEW** ... 3

**ARGUMENT** ... 3

- **I. Standing** ... 3
  - **A. Concreteness** ... 4
  - **B. Traceability** ... 9
- **II. Defendant's Arguments Under Rule 12(b)(6)** ... 11
  - **A. Consent** ... 11
  - **B. Mr. Cooper's Reliance on the Purported Limitation of Liability Fails.** ... 13
  - **C. Plaintiff's Common Law Claims Survive.** ... 16
  - **D. Plaintiff Does Not Dispute That California Statutory Claims Must Be Dismissed.** ... 22
  - **E. Plaintiff's ECPA Claim** ... 22
  - **F. Plaintiff's Claims Are Not Time-Barred.** ... 24

**CONCLUSION** ... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alexander v. Verizon Wireless Servs., L.L.C.*,
875 F.3d 243 (5th Cir. 2017) ....................23

*Allison v. PHH Mortgage*,
2026 WL 1353827 (N.D. Cal. May 14, 2026) ....................17

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ....................3, 5

*Atkins v. Amplitude, Inc.*,
No. 24-CV-04913-RFL, 2025 WL 2521732 (N.D. Cal. Sept. 2, 2025) ....................5

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ....................3

*Besteman v. Pitcock*,
272 S.W.3d 777 (Tex. App. 2008) ....................14, 15

*In re BetterHelp, Inc.*,
2024 WL 4504527 (N.D. Cal. Oct. 15, 2024) ....................24

*BHL Boresight, Inc. v. Geo-Steering Sols., Inc.*,
2016 WL 8648927 (S.D. Tex. Mar. 29, 2016), *modified on reconsideration,*
2017 WL 1177966 (S.D. Tex. Mar. 29, 2017) ....................24

*Blumenfeld v. Regions Bank*,
374 F. Supp. 3d 1165 (N.D. Ala. 2019) ....................8

*Bohnak v. Marsh & McLennan Cos., Inc.*,
580 F. Supp. 3d 21 (S.D.N.Y. Jan. 17, 2022) ....................6

*Booth v. Anschutz Ent't Grp., Inc.*
2025 WL 391761 (N.D. Tex. Feb. 3, 2025) ....................21

*Brown v. Google LLC*,
685 F. Supp. 3d 909 (N.D. Cal. 2023) ....................6

*Brown v. Learfield Commc'ns*,
2024 WL 3676709 (W.D. Tex. June 27, 2024) ....................22

*Brunecz v. Warren Gen. Hosp.*,
2026 WL 2043024 (W.D. Pa. July 15, 2026) ....................18, 19

*C.M. v. United States*,
672 F. Supp. 3d 288 (W.D. Tex. 2023)....................11, 12

*Calhoun v. Google, LLC*,
113 F.4th 1141 (9th Cir. 2024)....................11

*Calhoun v. Google LLC*,
526 F. Supp. 3d 605 (N.D. Cal. 2021)....................6

*Cochenour v. 360Training.com, Inc.*,
No. 1:25-CV-7-RP, 2025 WL 3251719 (W.D. Tex. Nov. 3, 2025)....................5

*Daghaly v. Bloomingdales.com, LLC*,
No. 23-4122, 2024 WL 5134350 (9th Cir. Dec. 17, 2024)....................7

*Davis v. USAA Sav. Bank*,
2015 WL 12712070 (W.D. Tex. July 29, 2015)....................11

*Deivaprakash v. Conde Nast Digital*,
798 F. Supp. 3d 1100 (N.D. Cal. 2025)....................5

*Dept. of Justice v. Reporters Committee for Freedom of Press*,
489 U.S. 749 (1989)....................6

*Doe v. Tenet Healthcare Corp.*,
789 F. Supp. 3d 814 (E.D. Cal. 2025)....................6

*In re ESO Solutions, Inc. Breach Litig.*,
2024 WL 4456703 (W.D. Tex. July 30, 2024)....................21

*Fulcrum Credit Partners LLC v. ChipMOS Techs. Inc.*,
2010 WL 11444280 (W.D. Tex. Mar. 30, 2010)....................16

*Gabrielli v. Haleon US Inc.*,
815 F. Supp. 3d 852 (N.D. Cal. 2025)....................24

*Gabrielli v. Haleon US Inc.*,
No. 25-CV-02555-WHO, 2025 WL 2494368 (N.D. Cal. Aug. 29, 2025)....................6

*Gaige v. Exer Holding Co., LLC*,
No. 2:24-CV-06099-AH-(AJRX), 2025 WL 559719 (C.D. Cal. Jan. 30, 2025)....................10

*Gershzon v. Meta Platforms, Inc.*,
No. 23-CV-00083-SI, 2023 WL 5420234 (N.D. Cal. Aug. 22, 2023)....................23

*Gorman v. Ethos Group Inc.*,
2024 WL 1257493 (N.D. Tex. Mar. 25, 2024)....................20

*Hays v. Frost & Sullivan, Inc.*,
2024 WL 4052741 (W.D. Tex. Aug. 16, 2024) ..... 19

*Heagerty v. Equifax Info. Servs. LLC*,
447 F. Supp. 3d 1328 (N.D. Ga. 2020) ..... 8

*Ingebretsen v. Jackson Pub. Sch. Dist.*,
864 F. Supp. 1473 (S.D. Miss. 1994) ..... 3

*Innova Hosp. San Antonio, Limited P'ship v. Blue Cross & Blue Shield of Ga.*,
892 F.3d 719 (5th Cir. 2018) ..... 21

*Khamooshi v. Politico LLC*,
No. 24-CV-07836-SK, 2025 WL 2822879 (N.D. Cal. Oct. 2, 2025) ..... 9

*Kinnie Ma Ind'l Retirement Account v. Ascendant Capital, LLC*,
2021 WL 11963058 (W.D. Tex. Aug. 25, 2021) ..... 16

*Kishnani v. Royal Caribbean Cruises Ltd.*,
No. 25-CV-01473-NW, 2025 WL 1745726 (N.D. Cal. June 24, 2025) ..... 7

*Kleck v. Bausch & Lomb, Inc.*,
145 F. Supp. 2d 819 (W.D. Tex. 2000) ..... 20

*LaRocca v. LaRocca*,
86 F. Supp. 3d 540 (E.D. La. 2015) ..... 24

*Larroque v. First Advantage LNS Screening Sols., Inc.*,
No. 15-CV-04684-JSC, 2016 WL 4577257 (N.D. Cal. Sept. 2, 2016) ..... 7

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
572 U.S. 118 (2014) ..... 10

*Linfo IP, LLC v. Mariner Fin., LLC*,
2026 WL 548684 (W.D. Tex. Jan. 27, 2026) ..... 12, 13

*Mecinas v. Hobbs*,
30 F.4th 890 (9th Cir. 2022) ..... 9

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) ..... 10

*Mikulsky v. Bloomingdale's, LLC*,
713 F. Supp. 3d 833 (S.D. Cal. 2024) ..... 23

*Mitchener v. CuriosityStream, Inc.*,
No. 25-CV-01471-NW, 2025 WL 2272413 (N.D. Cal. Aug. 6, 2025) ..... 7

*Mitchener v. Talkspace Network LLC*,
No. 2:24-CV-07067-JAK, 2025 WL 1822801 (C.D. Cal. June 27, 2025) ................................7

*Nayab v. Cap. One Bank (USA), N.A.*,
942 F.3d 480 (9th Cir. 2019) ..........................................................................................8

*Nguyen v. Abbott Lab'ys, Inc.*,
No. 24 CV 8289, 2025 WL 2299753 (N.D. Ill. Aug. 8, 2025) ..................................................7

*Norwood v. Raytheon Co.*,
455 F. Supp. 2d 597 (W.D. Tex. 2006).................................................................................3

*O'Handley v. Weber*,
62 F.4th 1145 (9th Cir. 2023), *cert. denied*, 144 S. Ct. 2715 (2024)......................................10

*In re Pawn Am. Consumer Data Breach Litig.*,
No. 21-CV-2554, 2022 WL 3159874 (D. Minn. Aug. 8, 2022) ...............................................6

*Persales v. Bank of Am., N.A.*,
2014 WL 3907793 (S.D. Tex. Aug. 11, 2014) .......................................................................19

*Podraza v. Nourish, Inc.*,
No. 25-CV-50356, 2026 WL 1078554 (N.D. Ill. Apr. 20, 2026) ...........................................10

*In re Poly-Am., L.P.*,
262 S.W.3d 337 (Tex. 2008)...............................................................................................15

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025) ..................................................................................7, 8, 9

*Rand v. Eyemart Express, LLC*,
2025 WL 1519726 (N.D. Tex. May 27, 2025) ......................................................................22

*Rodriguez v. Autotrader.com, Inc.*,
762 F. Supp. 3d 921 (C.D. Cal. 2025) .................................................................................7

*Rodriguez v. Autotrader.com, Inc.*,
No. 2:24-CV-08735-RGK-JC, 2025 WL 1085787 (C.D. Cal. Apr. 4, 2025)............................7

*Safety Vision LLC v. LEI Tech. Canada*,
738 F. Supp. 3d 859 (S.D. Tex. 2024) ...............................................................................14

*Salazar v. Paramount Glob.*,
683 F. Supp. 3d 727 (M.D. Tenn. 2023).............................................................................10

*Shah v. Capital One Fin. Corp.*,
768 F. Supp. 3d 1033 (N.D. Cal. 2025) ......................................................................19, 20, 21

*Shakeri v. ADT Sec. Servs., Inc.*,
2016 WL 6565743 (N.D. Tex. Nov. 4, 2016) ....................14

*In re Shields Health Care Group, Inc. Data Breach Litig.*,
721 F. Supp. 3d 152 (D. Mass. 2024) ....................18

*Slyce Acquisition Inc. v. Syte - Visual Conception Ltd.*,
422 F. Supp. 3d 1191 (W.D. Tex. 2019) ....................3

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) ....................3, 5

*Sweat v. Houston Methodist Hosp.*,
2024 WL 3070184 (S.D. Tex. June 20, 2024) ....................22

*Valentine v. WideOpen W. Fin., LLC*,
288 F.R.D. 407 (N.D. Ill. 2012) ....................11

*Warth v. Seldin*,
422 U.S. 490 (1975) ....................3

*In re Zappos.com, Inc.*,
2013 WL 4830497 (D. Nev. Sept. 9, 2013) ....................17

**Statutes**

18 U.S.C. § 2510(15) ....................24

18 U.S.C. § 2511(2)(d) ....................22

ECPA ....................22, 23, 24

Gramm Leach Bliley Act and the Fair Credit Reporting Act ....................12

HIPAA ....................22

State Consumer Privacy Act Laws ....................11

**Rules**

16 C.F.R. § 313.3 ....................18

Restatement of Torts ....................9

Restatement (Second) of Torts § 652B ....................9

Rule 8(a)(2) ....................3

Rule 12 ....................24

Rule 12(b)(1) ........ 3, 10, 11

Rule 12(b)(6) ........ 3, 11, 12

## INTRODUCTION

"By the grace of God," D.E. 68, this case now finds itself in the warm embrace of the Northern District of Texas. Defendant Nationstar Mortgage ("Mr. Cooper" or "Defendant") has filed a vast motion to dismiss, D.E. 71, 72, but this case is not complicated. Financial institutions like Defendant are not entitled to share consumers' sensitive information (information like why someone wants to refinance) with third parties, like Meta and Google, who in turn allow fourth parties to use the information—at least without explicit consent from the users. Yet Defendant installed tracking technologies on its website that did just that. Worse, none of Defendant's Privacy Policies disclose that it would share Plaintiff and other consumers' personally identifying and private financial information with third and fourth parties, for their benefit and Mr. Cooper's benefit. Accordingly, Plaintiff Martin Beltran ("Plaintiff" or "Beltran") respectfully submits this response to Defendant's Motion to Dismiss.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff filed this case on May 23, 2025 in the Northern District of California. D.E. 1. On August 18, 2025, Mr. Cooper moved to dismiss and to transfer venue. D.E. 24, 25. On September 8, 2025, Plaintiff filed an Amended Complaint ("Complaint"), which remains the operative pleading. D.E. 26. The Northern District of California heard oral argument on the motion to transfer on November 20, 2025, and ordered additional briefing. On March 6, 2026, the District Court granted Mr. Cooper's motion to transfer. D.E. 53. That order did not resolve Mr. Cooper's motion to dismiss.[1] After local counsel was secured, this Court set a briefing schedule. D.E. 68. On June 15, 2026, Mr. Cooper filed the instant Amended Motion to Dismiss. D.E. 71, 72.

[1] Obviously, Plaintiff disagrees with the finding in the order made by the Northern District of California. As the Court there acknowledged, rulings on motions to transfer are essentially unappealable. D.E. 47 at 19:5-6.

This case is about a mortgage servicer that collects and uses private customer data for its own business purposes and sells it to third parties. D.E. 26 at ¶¶ 32, 33. According to the Complaint, Mr. Cooper employs tracking technology on its website that captures and transmits consumers' data (like the reason a consumer wants to refinance) to third parties without their consent. D.E. 26 at ¶¶ 4, 53, 57–74. The collected data is also transmitted by third parties to fourth parties. D.E. 26 at ¶¶ 5–7, 33, 40, 75, 84, 90, 95. Mr. Cooper used these tracking technologies since at least May 2019. D.E. 26 at ¶ 54. Relevant to the arguments asserted in Mr. Cooper's Motion, Beltran also alleges that he (and consumers like him) never consented to the nature and degree of data transmission here. D.E. 26 at ¶¶ 1, 13, 14, 75, 95, 122, 136, 198.[2] Relevant to standing, Beltran never signed up for a mortgage with Mr. Cooper—his mortgage was bought out by Mr. Cooper from another mortgage servicer. D.E. 26 at ¶ 123. After Beltran started using Mr. Cooper's website, he began seeing all kinds of ads on third-party websites, because Mr. Cooper sold his data. D.E. 26 at ¶¶ 128, 137, 140. Upon information and belief, the data that Mr. Cooper took from customers and shared with tech companies is highly sensitive personal information: *e.g.*, reasons customers provide Mr. Cooper for refinancing, requests for quotes, the type of property at issue and the stage of the homebuying process. D.E. 26 at ¶¶ 4, 41, 46, 53, 62, 70, 71. All this is nonpublic, sensitive financial information. D.E. 26 at ¶ 64. And Mr. Cooper collected and shared it. D.E. 26 at ¶ 62.

Mr. Cooper's conduct harmed Plaintiff through the loss of his privacy, the unauthorized disclosure of his personal and financial information, the unauthorized access to his personal and financial information by third parties, the loss of the benefit of his bargain with Mr. Cooper, Mr.

---

[2] To be clear: the Northern District of California found the Terms of Use enforceable. D.E. 53. But Plaintiff's allegations go further than what Mr. Cooper disclosed in the Privacy Policy. Plaintiff alleges that Defendant represented that only those persons who need the information would be able to access it. D.E. 26 at ¶¶ 81–85. Plaintiff also alleges that despite what its Policy says, Mr. Cooper is indiscriminately sharing customer data. D.E. 26 at ¶ 86, and that Mr. Cooper abused whatever contractual discretion it held as to sharing. D.E. 26 at ¶¶ 88–95. So in essence, this case goes beyond what the Privacy Policy says or doesn't say.

Cooper's self-enrichment at his expense, embarrassment, humiliation, emotional distress, and the decreased value of his personal and financial information—among other harms. *Id.* ¶ 140.

**STANDARD OF REVIEW**

Rule 8(a)(2) requires a short and plain statement of the claim giving "the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This standard "does not require 'detailed factual allegations,'" but merely expects "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When considering a Rule 12(b)(6) motion, the Court must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Slyce Acquisition Inc. v. Syte - Visual Conception Ltd.*, 422 F. Supp. 3d 1191, 1198 (W.D. Tex. 2019). Motions to dismiss are disfavored in the Fifth Circuit. *Id.* All reasonable inferences are to be drawn in the pleader's favor. *Ingebretsen v. Jackson Pub. Sch. Dist.*, 864 F. Supp. 1473, 1480 (S.D. Miss. 1994). Similarly, on a motion to dismiss under Rule 12(b)(1), the factual allegations in the complaint are presumed true. *Id.*

**ARGUMENT**

Mr. Cooper brings its arguments under Rules 12(b)(1) and 12(b)(6) and attempts to shoehorn additional facts into this record. D.E. 72. Factual "appendices" are generally not appropriate for motions to dismiss. *Norwood v. Raytheon Co.*, 455 F. Supp. 2d 597, 599 n.1 (W.D. Tex. 2006). Plaintiff has standing, and addresses Defendant's other arguments in turn.[3]

**I. Standing**

To begin, standing tests whether a plaintiff has a sufficient "personal stake in the outcome" to invoke federal jurisdiction. *Warth v. Seldin*, 422 U.S. 490, 498 (1975). Standing hinges on the

[3] The appendix printouts are dated August of 2025. D.E. 72 at 5, PageID# 91. Defendant has not verified that Plaintiff saw these exact policies.

traditional tripartite test of (1) concrete injury, (2) traceability, and (3) redressability. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Here, Mr. Cooper attacks elements one and two of standing: concrete injury and traceability. D.E. 71 at 16.

**A. Concreteness**

The injury is concrete. Beltran is not merely alleging the tracking of benign information communicating nothing meaningful about him to others. What is actually being collected by Mr. Cooper and transmitted is highly confidential financial information. And Mr. Cooper's collection and transmission of that information facilitated third parties' (*i.e.*, Meta and Google) identification of users and their further ability to link users to other online accounts based on that information. D.E. 26 at ¶ 56. Those third parties in turn "[u]sed Customers' Personal and Financial Information for themselves and disclosed [it] to fourth parties who also profited off of it." D.E. 26 at ¶ 5.

For example, when a user interacts with Mr. Cooper's website to refinance his or her mortgage, the website reports to Facebook that the user is seeking "simple cash options." D.E. 26 at ¶ 58. The trackers further report that the user is an existing loan customer and that the user actually submitted a refinancing application to Mr. Cooper. D.E. 26 at ¶¶ 58, 60. That includes the specified reason the customer is trying to refinance or get a loan, including to pay off debt. D.E. 26 at ¶¶ 62, 64, 67. It also includes browsing activities, including the pages Plaintiff viewed, the property type and location, and the stage of the homebuying process the user is in. D.E. 26 at ¶ 137. To weave this litany of tech into a cohesive whole: Mr. Cooper tells tech companies that "User Bob" wants to refinance to pay off his debt, that he is an existing customer with Mr. Cooper, that his primary single-family residence is located in California, and that he actually hit the "Apply" button for refinancing. D.E. 26 at ¶¶ 58, 60, 62, 64, 67, 68.

This is highly valuable information to sell to advertisers who have an interest in selling

specific services to users like Plaintiff: *e.g.*, other mortgage companies looking to offer competitive refinance rates (as alleged here, D.E. 26 at ¶ 128), realtors, lenders looking to offer competitive loan pricing, and other real estate companies. As a matter of common sense, mortgages are one of the biggest investments an individual can make over their lifetimes, and mortgage companies have access to information that, if communicated to a stranger to that relationship, could inform the stranger that the mortgagor is cash-poor, recently secured a windfall, or needs to tap into their equity or refinance. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (instructing courts to draw on "common sense" when "[de]etermining whether a complaint states a plausible claim for relief"). The disclosure of this wholly private and confidential information—that personally identifies the consumer—is offensive.[4] Beltran has standing to assert claims to remedy such intrusions into his private life. Sharing data like why you want to refinance is outside the scope not only of the policies articulated by Mr. Cooper, D.E. 26 at ¶¶ 91, 92, 95, but of law.

Plaintiffs alleging the taking of sensitive information have experienced a concrete Article III injury. *Compare* D.E. 26 at ¶¶ 38, 45, 136, 137 (Mr. Cooper shared Plaintiff's data), *with Deivaprakash v. Conde Nast Digital*, 798 F. Supp. 3d 1100, 1107 n.4 (N.D. Cal. 2025) ("In any event, Deivaprakash's allegations likely satisfy Article III's injury requirement.") (denying motion to dismiss in online tracking case); *Cochenour v. 360Training.com , Inc.*, No. 1:25-CV-7-RP, 2025 WL 3251719, at *4 (W.D. Tex. Nov. 3, 2025) ("Given that Plaintiff has sufficiently alleged that her private information was disclosed, the Court likewise finds that Plaintiff has pled an injury that is sufficiently concrete to satisfy the requirements of *Spokeo* and *TransUnion*."); *Atkins v. Amplitude, Inc.*, No. 24-CV-04913-RFL, 2025 WL 2521732, at *1 (N.D. Cal. Sept. 2, 2025)

---

[4] Imagine, in a less technical world, a loan officer disclosing to a drinking buddy over beers that Mrs. Jones had come to the bank in her Sunday best and tearily confessed that she needed to tap into her equity to pay her bills or needed to refinance to make ends meet. Sharing such information would be violate the bank employee's duty to keep Mrs. Jones' confidential information safe.

(finding Article III standing with allegations of sharing timestamped geolocation information, search terms, products placed into a cart, and restaurants viewed); *Gabrielli v. Haleon US Inc.*, No. 25-CV-02555-WHO, 2025 WL 2494368, at *6 (N.D. Cal. Aug. 29, 2025) (finding Article III standing with allegations regarding website interactions, user input data, and browsing history); *see also Doe v. Tenet Healthcare Corp.*, 789 F. Supp. 3d 814, 836 (E.D. Cal. 2025) (similar); *Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 636 (N.D. Cal. 2021). All these cases confirm that Beltran has Article III standing and that his injury is concrete. Plaintiff lost his right to "control [] information concerning his ... person," which is encompassed within "both the common law and the literal understandings of privacy." *Dept. of Justice v. Reporters Committee for Freedom of Press*, 489 U.S. 749, 763 (1989).

These allegations also meet the standard for standing under "traditional" harms recognized at common law. District courts applying *TransUnion* to privacy cases find that privacy victims have standing when their data is disclosed, as the harm they suffer bears a "close relationship" to the "disclosure of private information" or an "intrusion" to their privacy—"traditional" harms that establish standing. *See, e.g.*, *Gabrielli v. Haleon US Inc.*, 2025 WL 2494368, at *6–8 (N.D. Cal. Aug. 29, 2025); *Brown v. Google LLC*, 685 F. Supp. 3d 909, 922 (N.D. Cal. 2023); *see also Bohnak v. Marsh & McLennan Cos., Inc.*, 580 F. Supp. 3d 21, 30 (S.D.N.Y. Jan. 17, 2022) ("in light of the *TransUnion* Court's admonition that common-law analogs need not provide 'an exact duplicate,'… I find the fit sufficiently close."); *In re Pawn Am. Consumer Data Breach Litig.*, No. 21-CV-2554 (PJS/JFD), 2022 WL 3159874, at

3 (D. Minn. Aug. 8, 2022) (same). The cases cited by Mr. Cooper are inapposite.[5]

Plaintiff's allegations about the transmitted data are particularized, not general. *See* D.E. 26 at ¶¶ 9, 38, 45, 136, 137. This is not a case where a consumer is simply interacting with a retail website that sells a widget or a retail product.[6] Mr. Cooper sets much store by the *Popa* case, but there, the plaintiff was simply browsing for pet supplies on www.petsuppliesplus.com. *Popa v. Microsoft Corp.*, 153 F.4th 784, 786 (9th Cir. 2025). That case actually supports finding that Beltran has standing under Article III here:

> At most, Popa alleges that Clarity gathered her pet-store preferences and her street name. To the extent Microsoft's tracking software *could* be offensive in particular circumstances (e.g., involving sensitive medical or financial information), Popa does not plausibly allege the infringement of any such privacy interest.

*Popa*, 153 F.4th at 791 (emphasis in original). Unsurprisingly, Mr. Cooper ignores that *Popa* itself stated that "financial information" is sufficiently sensitive for standing. That is precisely what is alleged in this case: the reason a customer wants to refinance, the current state of the

---

[5] Some of those cases concerned claims not present here and others did not analyze the Article III standing issue in detail. *Daghaly v. Bloomingdales.com, LLC*, No. 23-4122, 2024 WL 5134350, at *1 (9th Cir. Dec. 17, 2024) (short opinion addressing statutory rather than Article III standing); *Mitchener v. Talkspace Network LLC*, No. 2:24-CV-07067-JAK (BFMX), 2025 WL 1822801, at *8 (C.D. Cal. June 27, 2025) ("This conclusory allegation does not identify what personal information of Plaintiff's, if any, was captured by the TikTok Cookie."); *Rodriguez v. Autotrader.com, Inc.*, No. 2:24-CV-08735-RGK-JC, 2025 WL 1085787, at *1 (C.D. Cal. Apr. 4, 2025) (short opinion without much standing analysis concerning a tester of auto sales website); *Rodriguez v. Autotrader.com, Inc.*, 762 F. Supp. 3d 921, 926–27 (C.D. Cal. 2025) (same case) ("Not all information will qualify; the information must be *sufficiently personal or sensitive* that its disclosure is harmful. Because Plaintiff fails to describe the contents of her query, she fails to demonstrate that she suffered an injury in fact.") (internal citations omitted, emphasis added); *Larroque v. First Advantage LNS Screening Sols., Inc.*, No. 15-CV-04684-JSC, 2016 WL 4577257, at *1 (N.D. Cal. Sept. 2, 2016) (FCRA context). The reported *Rodriguez* opinion is precisely correct – the information given to a mortgage servicer is absolutely sufficiently personal and sensitive. Plaintiff regularly interacted with Mr. Cooper's website to manage his mortgage, used a number of the relevant tabs (like refinance and get cash from equity), and entered his personal information into the website. D.E. 26 at ¶¶ 126, 133. The Complaint explicitly alleges what Mr. Cooper shared of Plaintiff's. D.E. 26 at ¶¶ 9, 38, 45, 136, 137. Mr. Cooper is wrong that Plaintiff cannot point to any specific information taken.

[6] *Daghaly v. Bloomingdales.com, LLC*, No. 23-4122, 2024 WL 5134350, at *1 (9th Cir. Dec. 17, 2024) ("She alleges only that she 'visited' and 'accessed' the website.") (Bloomingdales does not sell mortgages); *Mitchener v. CuriosityStream, Inc.*, No. 25-CV-01471-NW, 2025 WL 2272413, at *1 (N.D. Cal. Aug. 6, 2025) (TikTok and video streaming); *Kishnani v. Royal Caribbean Cruises Ltd.*, No. 25-CV-01473-NW, 2025 WL 1745726, at *1 (N.D. Cal. June 24, 2025) (cruises and TikTok); *Nguyen v. Abbott Lab'ys, Inc.*, No. 24 CV 8289, 2025 WL 2299753, at *1 (N.D. Ill. Aug. 8, 2025) (plaintiffs who requested free trials of glucose monitoring devices).

homebuying process, that a customer wants to procure a loan to "get cash," D.E. 26 at ¶¶ 4, 58, 115, exactly what Beltran browsed for on Mr. Cooper's website. D.E. 26 at ¶ 126. Mr. Cooper unlawfully shared that information and sent it to third and fourth parties for those third and fourth parties' benefit. D.E. 26 at ¶¶ 9, 33, 38, 42, 45, 136, 137.

*Popa* analogized the injuries suffered by the dog food plaintiff to a store clerk observing customers. *Popa*, 153 F.4th at 791 ("Indeed, the monitoring of Popa's interactions with PSP's website seems most similar to a store clerk's observing shoppers in order to identify aisles that are particularly popular or to spot problems that disrupt potential sales."). While the fact that someone has a mortgage or owns property might be publicly accessible information, the reasons a customer wants to refinance, what kind of loan they want to apply for, and where they are in the homebuying process are not. A grocery store or pharmacy is a public place. The chair in the office of your local bank's branch manager is not. So this case falls precisely into *Popa*'s description of sensitive financial information.

Where financial information is concerned, courts have generally found a sufficient basis for standing rooted in the common law torts of public disclosure of private facts or intrusion upon seclusion. *Nayab v. Cap. One Bank (USA), N.A.*, 942 F.3d 480, 492 (9th Cir. 2019) ("This harm is highly offensive and is not trivial because a credit report can contain highly personal information."); *Heagerty v. Equifax Info. Servs. LLC*, 447 F. Supp. 3d 1328, 1337 (N.D. Ga. 2020) ("intrusion on financial information" was a sufficient basis for standing); *Blumenfeld v. Regions Bank*, 374 F. Supp. 3d 1165, 1170 (N.D. Ala. 2019) ("Under the correct standard, the alleged harm in this case—disclosure of Ms. Blumenfeld's private financial information to a third party—bears a close relationship to the common law's protection against disclosure of private information."). The context of disclosing a credit report is not so different than

disclosing the reason behind applying for a loan or where a homebuyer is in the process. As one case cited by Mr. Cooper made clear: it's all about the kind of data disclosed. *Khamooshi v. Politico LLC*, No. 24-CV-07836-SK, 2025 WL 2822879, at *3 (N.D. Cal. Oct. 2, 2025) ("While some types of browsing activity implicate protectable privacy interests, others do not.").

The injury here is therefore precisely the type of injury that cases like *Popa* conclude as sufficient for Article III standing. Indeed, an illustration from the Restatement of Torts for the section on intrusion upon seclusion is instructive: "A is seeking evidence for use in a civil action he is bringing against B. He goes to the bank in which B has his personal account, exhibits a forged court order, and demands to be allowed to examine the bank's records of the account. The bank submits to the order and permits him to do so. A has invaded B's privacy." Restatement (Second) of Torts § 652B at cmt. b (1977). What if those bank records contain a refinance application with a box marked "Reason for Refinancing"? As this illustration makes clear, the data Mr. Cooper allegedly disclosed rises to the level of Article III injury.

**B. Traceability**

Next, Mr. Cooper attempts to argue that Beltran's injuries are not traceable to its actions. It is difficult to see how Mr. Cooper makes this argument with a straight face. The allegations are that Mr. Cooper disclosed Beltran's private data without his consent. *E.g.*, D.E. 26 at ¶¶ 32, 33, 38, 45, 136, 137. Beltran pleads a variety of damages, pleadings that Mr. Cooper conveniently ignores, including embarrassment, frustration, humiliation, emotional distress, and decreased value of information, D.E. 26 at ¶ 140, in addition to him seeing targeted ads around the same time he opened an online account with Mr. Cooper. D.E. 26 at ¶¶ 128, 140(e). There is no real question that Beltran has pled Mr. Cooper caused his injuries.

Traceability hinges on causation. *Mecinas v. Hobbs*, 30 F.4th 890, 899 (9th Cir. 2022).

This is less strenuous than proximate causation required under tort law. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 134 n.6 (2014) ("Proximate causation is not a requirement of Article III standing, which requires only that the plaintiff's injury be fairly traceable to the defendant's conduct."); *O'Handley v. Weber*, 62 F.4th 1145, 1161 (9th Cir. 2023), *cert. denied*, 144 S. Ct. 2715 (2024) ("[T]he traceability requirement is less demanding than proximate causation, and thus the 'causation chain does not fail solely because there are several links' or because a single third party's actions intervened.") (quoting *Maya v. Centex Corp.*, 658 F.3d 1060, 1070 (9th Cir. 2011)). Mr. Cooper's effort to import a more stringent traceability requirement into the standing analysis is plainly wrong.

And Plaintiff has more than adequately pled causation here. For example, in the context of intrusion upon seclusion, the injury is traceable to the entity that transmitted the data. Here, that is Mr. Cooper. *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 803 (N.D. Cal. 2022) ("Plaintiffs have alleged that Meta is causally connected to their injury. That website developers may also be liable does not mean, of course, that Meta is exempt from liability. And Meta's efforts to prevent receipt of health information do not diminish the irreparable invasion of privacy that plaintiffs have experienced."); *see also Salazar v. Paramount Glob.*, 683 F. Supp. 3d 727, 741 (M.D. Tenn. 2023) (analyzing traceability in a similar pixel case and finding the injury sufficiently alleged). Receiving targeted advertising is sufficient to confer standing. *Podraza v. Nourish, Inc.*, No. 25-CV-50356, 2026 WL 1078554, at *2 n.4 (N.D. Ill. Apr. 20, 2026) ("The harm posed by irritating advertisements is analogous to that posed by intrusion upon seclusion, a long-recognized tort."); *Gaige v. Exer Holding Co., LLC*, No. 2:24-CV-06099-AH-(AJRX), 2025 WL 559719, at *2 (C.D. Cal. Jan. 30, 2025).

Mr. Cooper's Rule 12(b)(1) arguments are a red herring. Plaintiff's injuries are

sufficiently concrete and the injuries he alleges are directly traceable to Mr. Cooper's conduct.

**II. Defendant's Arguments Under Rule 12(b)(6)**

The remainder of Mr. Cooper's arguments are couched under Rule 12(b)(6) rather than Rule 12(b)(1). Plaintiff alleges each in turn.

**A. Consent**

Mr. Cooper's argument that Plaintiff consented to the sharing practices at issue is an improper affirmative defense that mischaracterizes the terms of the parties' actual agreement.

First, consent is an affirmative defense. *See generally Davis v. USAA Sav. Bank*, 2015 WL 12712070, at *2 (W.D. Tex. July 29, 2015); *see also Calhoun v. Google, LLC*, 113 F.4th 1141, 1147 (9th Cir. 2024); *Valentine v. WideOpen W. Fin., LLC*, 288 F.R.D. 407, 413 (N.D. Ill. 2012). Dismissal on the basis of an affirmative defense is appropriate only if the defense is conclusively established on the face of the Complaint. *C.M. v. United States*, 672 F. Supp. 3d 288, 354 (W.D. Tex. 2023). Here, Mr. Cooper cannot show that the Complaint conclusively establishes that Plaintiff consented to the challenged sharing. To the contrary, Plaintiff repeatedly alleges that he did *not* consent to Mr. Cooper's sharing of his data with third parties for the benefit and use of third and fourth parties. *E.g.*, D.E. 26 at ¶¶ 1, 5, 6, 33, 40, 75, 95, 122, 136, 170, 198. These factual allegations must be accepted as true on this motion and defeat Mr. Cooper's consent defense.

Further fatal to Mr. Cooper's affirmative defense of consent is that it relies on disclosures that are not included in the Complaint. Specifically, in arguing that Plaintiff consented to Mr. Cooper's sharing of the data at issue for advertising purposes, Mr. Cooper cites to a document attached to Mr. Tayman's declaration and titled, "State Consumer Privacy Act Laws – FAQ" (the "FAQ Page"). D.E. 71 at 10. Mr. Cooper thus assumes that this FAQ Page is a contractual document, even though the Complaint alleges that the parties' contract is comprised only of the

"Privacy Policy," "Consumer Privacy Notice," and "California Privacy Notice." D.E. 26 at ¶ 78; *see also* D.E. 26-01–26-03. Indeed, despite Mr. Cooper's labeling of the FAQ Page as a relevant "policy" to which Plaintiff agreed, the document itself is clear that such disclosures are *not* a binding contract document, but rather "state-required disclosures" and "FAQs." D.E. 72 at Appx. 012. Hence, Mr. Cooper's motion introduces additional disclosures and creates a factual dispute as to whether the FAQ Page is a binding policy to which Plaintiff agreed. This issue cannot be resolved on a motion to dismiss. *Linfo IP, LLC v. Mariner Fin., LLC*, 2026 WL 548684, at *2 (W.D. Tex. Jan. 27, 2026), *report and recommendation adopted*, 2026 WL 543779 (W.D. Tex. Feb. 25, 2026); *see also C.M.*, 672 F. Supp. 3d at 354 ("[A]lthough defendants may raise defenses through a motion to dismiss under Rule 12(b)(6), the courts view them through the standards applicable to such motions."). The motion falls far short of meeting Mr. Cooper's burden to "conclusively establish" its consent affirmative defense and must fail.

Second, even if Mr. Cooper's consent defense could be decided at this stage, the affirmative defense still fails because it rests on a fundamental misreading of the policies. Specifically, Mr. Cooper cites the FAQ page to argue that the applicable privacy policies "explicitly state that Mr. Cooper may share the precise data at issue for advertising purposes." D.E. 71 at 10. But, crucially, the FAQ Page states: "If you have a mortgage or an application with us, the information we have about you is protected under federal privacy laws–such as the Gramm Leach Bliley Act and the Fair Credit Reporting Act. It is therefore excluded from state privacy laws, and *not covered by the disclosures below*." D.E. 72 at Appx. 012-13 (emphasis added). Here, "Plaintiff Beltran has a mortgage with Mr. Cooper." D.E. 26 ¶ 17. Accordingly, under the FAQ Page's plain terms, the information Mr. Cooper has about Plaintiff "is excluded from state privacy laws, and not covered by" the FAQ Page's disclosures. D.E. 72 at Appx. 013.

The motion also fails to the extent it relies on the Privacy Policy's language that "Third parties may also use similar technologies to collect information about your online activities over time and across different third party sites, including your use of this Mr. Cooper website." D.E. 71 at 10 (quoting D.E. 26-1). Such language reasonably means that these third parties may collect information regarding Plaintiff's use of Mr. Cooper's website only if the trackers were installed and active *before* Plaintiff visited the website. Indeed, nothing in this language warns that Mr. Cooper itself will install these third-party trackers when Plaintiff viewed Mr. Cooper's website to enable third parties to collect and use Plaintiff's confidential information where they previously had no ability to do so. To the contrary, the Privacy Policy states that any "cookies" or "tracking systems" that Mr. Cooper "may send . . . to your computer" are used "to enhance your online experience" and let Mr. Cooper "know whether you received and opened our e-mail." *Id*. at 5. Put simply, there is no language in any of Mr. Cooper's privacy policies that authorize Mr. Cooper to install third-party trackers that collect and share Plaintiff's private information for purposes wholly unrelated to Mr. Cooper's administration of his mortgage. The motion should be denied.

**B. Mr. Cooper's Reliance on the Purported Limitation of Liability Fails.**

Mr. Cooper's argument that Plaintiff cannot recover damages under the limitation of liability provision also fails. For the reasons stated above, the invocation of this purported provision is an affirmative defense and is based on a set of disclosures that are not part of Plaintiff's Complaint. *See* D.E. 72 at Appx 002 ¶ 3. The provision is further inapplicable and unenforceable because it is both procedurally and substantively unconscionable.

"In determining whether a limitation of liability clause is unconscionable or against public policy, courts generally consider the entire atmosphere in which the agreement was made, the bargaining process the parties went through, and whether there is such a disparity in bargaining

power between the parties that one party is forced to agree to the exculpatory provision." *Shakeri v. ADT Sec. Servs., Inc.*, 2016 WL 6565743, at *4 (N.D. Tex. Nov. 4, 2016) (quoting *Mireles v. Tejas Appraisal & Inspection Co.*, 2007 WL 1826074, at *1 (Tex. App. 2007, no pet.) (internal citations omitted)). "Often, a disparity in bargaining power can result in oppression or unreasonableness that is labeled 'unconscionable.'" *Besteman v. Pitcock*, 272 S.W.3d 777, 789 (Tex. App. 2008) (citation omitted). Further, "[u]nconscionability has been found when there is a 'gross disparity in the values exchanged' and the 'grounds for substantive abuse [are] sufficiently shocking or gross to compel the court to intercede.'" *Id*. (quoting *Ski River Dev., Inc. v. McCalla*, 167 S.W.3d 121, 136 (Tex. App. 2005)).

Here, each of these factors favor a finding of procedural unconscionability. First, Plaintiff alleges that his mortgage was transferred to Mr. Cooper from Bank of America "without him knowing," a fact he only discovered when he unsuccessfully tried to make a payment through Bank of America. D.E. 26 ¶ 124. Thus, Plaintiff did not necessarily voluntarily choose to utilize Mr. Cooper's service; rather, he "had to set up an account with Mr. Cooper" to pay his mortgage. *Id*. Further, Plaintiff did not have any opportunity to negotiate terms with Mr. Cooper regarding his use of the website. The terms of use—including the purported limitation of liability—were presented to Plaintiff on a take it or leave it basis, and his agreement to the terms was mandatory for him to create an account. *See* D.E. 24-3. And, unlike limitations provisions between two sophisticated entities, the terms of use here apply to a consumer transaction "entered into by a naive and credulous member of the public," not a sophisticated party with equal bargaining power, and "that tends to lead to unconscionable terms." *See Safety Vision LLC v. LEI Tech. Canada*, 738 F. Supp. 3d 859, 872 (S.D. Tex. 2024). Such facts all weigh in favor of procedural unconscionability and against enforcement of the limitation of liability provision.

The limitation of liability language is also so one-sided as to be substantively unconscionable. The test for substantive unconscionability is whether, "given the parties' general commercial background and the commercial needs of the particular trade or case, the clause involved is so one-sided that it is unconscionable under the circumstances existing when the parties made the contract." *Besteman*, 272 S.W.3d at 789 (Tex. App. 2008) (quoting *In re Palm Harbor Homes, Inc.,* 195 S.W.3d 672, 678 (Tex.2006)). Here, the provision does not simply cap damages or exclude consequential damages in a commercially reasonable way — it purports to eliminate all damages under any theory whatsoever. A blanket prohibition on any damages for any reason is precisely the type of limitation courts have found to be substantively unconscionable, particularly where, as here, when it strips away remedies the law specifically confers rather than simply reallocating ordinary commercial risk. *E.g.*, *In re Poly-Am., L.P.*, 262 S.W.3d 337, 352 (Tex. 2008) (holding an arbitration provision's elimination of statutory remedies was substantively unconscionable and void).

Similarly, here, the limitation of liability language purports to insulate Mr. Cooper from "ANY DIRECT, INDIRECT, PUNITIVE, INCIDENTAL, SPECIAL OR CONSEQUENTIAL DAMAGES, LOSSES OR EXPENSES (WHETHER BASED IN CONTRACT, TORT, STRICT LIABILITY OR OTHERWISE)," regardless of whether Mr. Cooper knew of such damages, losses, or expenses. D.E. 72 at Appx. 009. This is not an ordinary risk allocation; it is an attempt to place Mr. Cooper beyond the reach of the very laws designed to police its conduct and protect consumers like Plaintiff. Limitations provisions subject to this staggering breadth, all without any corresponding protection for the consumer, is substantively unconscionable and unenforceable. Additionally, if Mr. Cooper did not disclose that it was tracking data and sharing it with third parties for the third parties and fourth parties to use, then there was no meeting of the minds here.

**C. Plaintiff's Common Law Claims Survive.**

Throughout its motion to dismiss, Defendant asserts that Plaintiff's garden-variety common-law claims fail simply because they are pleaded alongside different theories of liabilities. *E.g.*, Def. Mot. at 12 ("Plaintiff cannot plead an implied contract claim where the alleged implied promises are identical to the express contract."); *id.* at 13 ("Plaintiff's [unjust enrichment] claim is duplicative of his contract claim."); *id.* at 15 ("[T]he Complaint alleges intentional conduct, not negligence, and must be dismissed for that reason."). But "[t]he Federal Rules of Civil Procedure allow a party to assert separate claims under alternative theories of liability." *Fulcrum Credit Partners LLC v. ChipMOS Techs. Inc.*, 2010 WL 11444280, at *8 (W.D. Tex. Mar. 30, 2010) (citing Fed. R. Civ. P. 8(d)(2)). That is true "even if the theories underlying the claims are inconsistent with each other." *Id.* (quoting *Agri-Plastics, Inc. v. Hog Slat, Inc.*, 2010 WL 711811, at *6 (N.D. Tex. 2010)). As shown above, questions abound as to whether Defendant's conduct was covered by an express, implied contract, or whether it was extracontractual altogether. And those fact-laden questions are inappropriately resolved at the pleading stage. *See, e.g.*, *id.* (permitting "implied contract theory" and "express contract" theories to be asserted as "alternative claims"); *Kinnie Ma Ind'l Retirement Account v. Ascendant Capital, LLC*, 2021 WL 11963058, at *5 (W.D. Tex. Aug. 25, 2021) (denying motion to dismiss as to whether claim arises under contract or in tort because "'this legal determination involves a factual inquiry' that is inappropriate on a motion dismiss" (quoting *Hughes Wood Prod., Inc. v. Wagner*, 18 S.W.202, 204 (Tex. 2000)). Thus, Defendant's contention that these claims cannot coexist as alternative claims is without merit.

**1. Plaintiff has sufficiently pleaded a breach of contract claim (Count 5).**

Defendant's argument that Plaintiff hasn't alleged a breach of contract, at heart, reprises its earlier arguments as to consent. But, for similar reasons, it fares no better here than it did there.

As to Plaintiff's express contract claim, the Complaint does allege a specific policy that was plausibly breached to sustain his claim: Defendant's Privacy Policy. D.E. 26 at ¶¶ 75–95. According to the Privacy Policy, Defendant promises to disclose Plaintiff and the putative class's information to "[o]nly those persons who need it to perform their job responsibilities" and it "take[s] commercially reasonable precautions to protect [their] information and limit disclosure." *Id.* ¶ 81. To the extent that any information is disclosed, Defendant purportedly "require[s] that these companies keep all personal information confidential." *Id.* ¶ 83. And while Defendant discloses that it uses cookies "to your computer primarily to enhance your online experience" as well as other "[t]racking systems" that deliver graphic images on a web page for the purpose of transferring data or letting Defendant "know whether you received and opened our e-mail," the policy never tells users that it sends that information to third parties, like Google and Meta, so that they can use that information to benefit themselves and fourth parties. *Id.* ¶ 84. By doing so, as the Complaint alleges (*e.g.*, *id.* ¶ 115), the Complaint plausibly alleges that Defendant broke its promises to Plaintiff and the putative class. *See Allison v. PHH Mortgage*, 2026 WL 1353827, at *9 (N.D. Cal. May 14, 2026) (denying motion to dismiss express contract claim because plaintiff alleged "that PHH breached provisions of the Privacy Contracts that PHH would not collect and disclose individualized user data").

Defendant's arguments to the contrary are without merit. The statements in Defendant's Privacy Policy are far more specific than the vague, broad statements at issue in the cases on which Defendant relies. *See In re Zappos.com, Inc.*, 2013 WL 4830497, at *3 (D. Nev. Sept. 9, 2013)

(dismissing express contract claim where "statements on Zappos's website indicated that its servers were protected by a secure firewall and that customers' data was safe" were insufficient to "create any contractual obligations," though noting "such statements can be the basis of misrepresentation claims in tort"); *In re Shields Health Care Group, Inc. Data Breach Litig.*, 721 F. Supp. 3d 152, 162 (D. Mass. 2024) (same). And Defendant's position that the Privacy Policy can't constitute a contract is self-defeating. Mot. at 12. It invoked its Terms of Use—which expressly incorporate the Privacy Policy, *see* D.E. 24-2 at 5—to establish that those terms govern the parties' relationship, ultimately leading to this case's transfer to Texas.[7] It cannot now disavow the Privacy Policy when Plaintiff alleges Defendant breached it. Finally, as explained *supra*, Plaintiff has alleged "specific information" that was disclosed, including "the reason the customer is seeking to refinance" and "the user's request for a quote and a summary of the user's selection," along with personally-identifying information D.E. 26 at ¶ 115—all information that is nonpublic and financially sensitive, *see, e.g.*, 16 C.F.R. § 313.3.

As to Plaintiff's implied contract claim, setting aside Defendant's flawed argument that an implied contract claim cannot be pleaded alternatively to an express contract claim, *see supra*, if Defendant's Privacy Policy is insufficient to constitute an express contract, then Defendant offers no reason why it can't sustain an implied contract claim. *See, e.g.*, *Brunecz v. Warren Gen. Hosp.*, 2026 WL 2043024, at *11 (W.D. Pa. July 15, 2026) (explaining "existence and relevant aspects of WGH's Privacy Policy . . . plausibly plead the essential terms of an implied contract to safeguard Plaintiffs' Private Information" and "unauthorized disclosure" establishes as a sufficient breach). Texas courts have found similar Privacy Policies to sustain similar breach of implied contract

[7] If the Court finds there was no contract based on Defendant's arguments, it should transfer the case back to California.

claims. *See Hays v. Frost & Sullivan, Inc.*, 2024 WL 4052741, at *9–10 (W.D. Tex. Aug. 16, 2024) (collecting cases). The contract claims should survive.

**2. Plaintiff has sufficiently pleaded an unjust enrichment claim (Count 6).**

Defendant's request for dismissal of the unjust enrichment claim largely rests on the imprecise assumption that "unjust enrichment is not a cause of action" under Texas Law. Mot. at 13. But, as Judge Rosenthal observed, "Texas law is not completely clear" and "[s]ome courts, including the Texas Supreme Court and the Fifth Circuit, have acknowledged such claims." *Persales v. Bank of Am., N.A.*, 2014 WL 3907793, at *3 (S.D. Tex. Aug. 11, 2014). "Whether unjust enrichment is characterized as a cause of action or a theory of recovery, the elements are clear." *Id.* "Unjust enrichment allows recovery 'when one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage.'" *Id.* (quoting *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992)).

Defendant contends—largely rehashing the arguments as to consent, standing, and the breach of contract claims—that the unjust enrichment claim "must be dismissed" because (1) Plaintiff does not plead any contracts are invalid, and (2) "any data sharing is not unjust because Plaintiff consented." Mot. at 13. But Plaintiff does plausibly allege that Defendant's data-sharing practice is not covered by the disclosure—in other words, it is extracontractual. *See Shah v. Capital One Fin. Corp.*, 768 F. Supp. 3d 1033, 1052 (N.D. Cal. 2025) (denying motion to dismiss unjust enrichment claim where Plaintiff alleges lack of consent and "that Defendant benefited from using Plaintiffs' information"); *Brunecz*, 2026 WL 2043024, at *11 (same). And so, whether Defendant

even consented is, at best, a factual question that is inappropriately resolved at the pleading stage, as explained earlier. *Cf. Shah*, 768 F. Supp. 3d at 1044.

**3. Plaintiff has sufficiently pleaded a breach of confidence claim (Count 7).**

Defendant is also wrong that Plaintiff's breach of confidence claim must be dismissed because Texas law categorically does not recognize such claims. *See, e.g.*, *Kleck v. Bausch & Lomb, Inc.*, 145 F. Supp. 2d 819, 827 (W.D. Tex. 2000) (explaining "breach of confidence" claim is, at core, a "quasi-contract action" but dismissing claim because "idea was not novel"). As a quasi-contractual action, the breach of confidence claim covers circumstances where "an idea is offered in confidence and the recipient later discloses the idea." *Id.* Defendant baldly concludes that Plaintiff alleges "no such" novel idea. Mot. at 14. But Plaintiff does allege, again in the alternative to Plaintiff's express contract claim, that he disclosed confidential and novel information as to his financial condition, why he wanted to refinance, and the type of lending product he sought, D.E. 26 at ¶ 115, all of which Defendant failed to keep confidential. Even Defendant's authority suggests that such a claim may be sustained under Texas law. *See Gorman v. Ethos Group Inc.*, 2024 WL 1257493, at *4 (N.D. Tex. Mar. 25, 2024) (granting leave to amend breach of confidence claim where "data breach included some persons' date of birth" and directing plaintiff "to provide additional factual allegations regarding the specific steps that Plaintiffs took to maintain their driver's license numbers and date of birth as secret or substantially secret").

**4. Plaintiff has sufficiently pleaded a negligence claim (Count 1).**

Finally, Defendant largely repackages its earlier attacks to seek dismissal of Plaintiff's negligence claim too. They fare no better here. Notably, Defendant does not seriously dispute any element of negligence other than damages. Instead, it advances two sweeping arguments that the negligence claim is categorically barred. Both are wrong. First, Defendant claims Plaintiff "does

not allege *what* he provided to Mr. Cooper and only generally alleges information the website *could collect*." Mot. at 14. But, at the pleading stage, Plaintiff is entitled to reasonable inferences to be drawn in his favor. *See Booth v. Anschutz Ent't Grp., Inc.* 2025 WL 391761, at *2 (N.D. Tex. Feb. 3, 2025). And, as explained *supra*, Plaintiff alleges that he used Defendant's website to submit sensitive information concerning his decision to refinance, and the website was configured to automatically transmit this private data. That is enough to entitle Plaintiff to a reasonable inference that his private information was transmitted to the third parties named in the Complaint when he used Defendant's website, as the website was configured to do.[8] Nor does Defendant's contention that allegations of intentional conduct bar a negligence claim withstand scrutiny. Mot. at 15. Plaintiff expressly pleads those theories in the alternative, as discussed above.

Defendant's claim that Plaintiff did not allege "any cognizable damage" fares no better. As explained earlier in the Article III injury section, Defendant is mistaken. Specifically, Plaintiff pleads embarrassment, frustration, humiliation, emotional distress, and decreased value of his information—all of which have been found sufficient to establish an injury. *See, e.g.*, *In re ESO Solutions, Inc. Breach Litig.*, 2024 WL 4456703, at *5–6 (W.D. Tex. July 30, 2024) (concluding that disclosure of "generally private" information constitutes an actionable injury); *Shah*, 768 F. Supp. 3d at 1045–46 (denying motion to dismiss as to negligence claim in similar tracking technology case). More fundamentally, Defendant does not dispute that it had a duty to safeguard its customers' private preferences and so it follows that such duty was breached (and caused an

[8] Such inference is especially appropriate when that information, as here, is exclusively within the control of Defendant. *See Innova Hosp. San Antonio, Limited P'ship v. Blue Cross & Blue Shield of Ga.*, 892 F.3d 719, 730 (5th Cir. 2018) (reversing dismissal of claim that "when discoverable information is in the control and possession of a defendant, it is not necessarily the plaintiff's responsibility to provide that information in her complaint"). In other words, the facts that Plaintiff used Mr. Cooper's website to conduct certain financial transactions, and the website was configured to automatically transmit such data makes it plausible that Mr. Cooper, in fact, transmitted that information to third parties. The tranche of data that Mr. Cooper, in fact, transmitted is within Mr. Cooper's, not Plaintiff's possession, and this case is at the pleading—not proving—stage.

injury) when Defendant acted contrary to that duty. Financial institutions have a duty to safeguard sensitive financial customer information, plain and simple.

**D. Plaintiff Does Not Dispute That California Statutory Claims Must Be Dismissed.**

Because the Northern District of California has already ruled that this case is governed by the Terms of Use Agreement, which requires application of Texas law, Plaintiff agrees that the California statutory claims are barred. If leave to amend Plaintiff's Complaint is granted, however, Plaintiff requests the opportunity to assert any applicable Texas consumer protection law claims.

**E. Plaintiff's ECPA Claim**

For the reasons stated above, Mr. Cooper's regurgitated consent argument fails.

Mr. Cooper next relies on the ECPA's "one party consent" provisions. D.E. 71 at 20. But the one-party consent provision is inapplicable if the disclosure itself constitutes a tort or a criminal act. 18 U.S.C. § 2511(2)(d). Here, Plaintiff alleges that Mr. Cooper's disclosure of his private data violated the GLBA, FTC Standards, and related regulations. D.E. 26 at ¶¶ 109-22. The one-party consent provision is unavailing. *See Sweat v. Houston Methodist Hosp.*, 2024 WL 3070184, at *4 (S.D. Tex. June 20, 2024) (applying crime-tort exception and denying motion to dismiss in case challenging improper data sharing).

*Rand v. Eyemart Express, LLC*, 2025 WL 1519726, at *5 (N.D. Tex. May 27, 2025), cited by Mr. Cooper, is inapplicable because the court found the crime-tort exception inapplicable where the plaintiffs failed to plead facts to establish that any protected health information was shared in violation of HIPAA. Here, Plaintiff alleges that Mr. Cooper shared data that is protected under the GLBA. D.E. 26 at ¶ 115. *Brown v. Learfield Commc'ns*, 2024 WL 3676709, at *5 (W.D. Tex. June 27, 2024), is also inapposite because the court there found no underlying crime or tort had been alleged because the plaintiff's allegations were "not tethered to another independent tortious or

criminal act." By contrast, as above, Plaintiff here alleges that the unauthorized sharing violated the GLBA, FTC Act, and related regulations.

Next, Mr. Cooper argues that the shared data are not "contents" under the ECPA but are merely "non-actionable record information." D.E. 71 at 20. Yet, tellingly, Mr. Cooper's motion cites to numerous allegations that *do* plead that Mr. Cooper reviewed the contents of those communications. *E.g.*, D.E. 26 at ¶¶ 259, 261, 263, 309–22, 324–34.

In reality, Plaintiff alleges that Mr. Cooper shared substantive information regarding his mortgage, such as his status as a customer, the location of his property, the type of property at issue, his refinancing options, and the reason he was seeking to refinance. D.E. 26 at ¶ 4. Such allegations confirm that Mr. Cooper shared the substance of Plaintiff's communications with Mr. Cooper, not merely the categories of information or the fact they occurred. *See generally Alexander v. Verizon Wireless Servs., L.L.C.*, 875 F.3d 243, 247 n.6 (5th Cir. 2017) (explaining distinction between content and non-content). Put differently, this shared data is not simply information like "button clicks" and "mouse movements," which do not necessarily convey anything about why the consumer is on the page, as discussed in *Mikulsky v. Bloomingdale's, LLC*, 713 F. Supp. 3d 833, 845 (S.D. Cal. 2024), cited by Mr. Cooper. The data at issue here is highly personal financial information that should never have been shared or sold. *See Gershzon v. Meta Platforms, Inc.*, No. 23-CV-00083-SI, 2023 WL 5420234, at *13 (N.D. Cal. Aug. 22, 2023) ("This type of information is substantive and personal, as it shows that [plaintiff] has a disability (or believes that he has a disability) and that he requires a disability parking placard.").

**1. The Complaint plainly alleges interception in transit.**

Mr. Cooper next argues that Counts 8, 11, and 12 fail because they do not allege an interception in transit. D.E. 71 at 22. As Plaintiff pleads, information is transmitted to third parties

"instantaneously" the moment the page loads. D.E. 26 at ¶ 121; *see also id.* at ¶¶ 35, 38, 39, 261–63. Such allegations are sufficient, and the motion should be denied. *See, e.g.*, *LaRocca v. LaRocca*, 86 F. Supp. 3d 540, 543 (E.D. La. 2015) (finding that spyware that collects and reports email and activity constitutes an "interception" because "a violation of Title I [of the ECPA] can occur where one acquires an electronic communication at or around transmission") (citing *Steve Jackson Games, Inc. v. U.S. Secret Serv.*, 36 F.3d 457, 463 (5th Cir. 1994)).

**2. Mr. Cooper provides an electronic communication service (Count 12).**

Finally, Mr. Cooper argues that Plaintiff's claim under Section 2511(3)(a) of the ECPA cannot proceed. D.E. 71 at 25. But the language of the statute is clear: an electronic communication service is "any" service that provides users with the ability to send or receive electronic communications. 18 U.S.C. § 2510(15). Accordingly, the term "electronic communication service" "also encompasses protected websites and databases." *BHL Boresight, Inc. v. Geo-Steering Sols., Inc.*, 2016 WL 8648927, at *20 (S.D. Tex. Mar. 29, 2016), *modified on reconsideration,* 2017 WL 1177966 (S.D. Tex. Mar. 29, 2017). Accordingly, courts have allowed these claims to proceed beyond the Rule 12 stage. *In re BetterHelp, Inc.*, 2024 WL 4504527, at *2 (N.D. Cal. Oct. 15, 2024). The same result is appropriate here. For these reasons, dismissal of Plaintiff's ECPA claim is inappropriate, and the motion on that point should be denied.

**F. Plaintiff's Claims Are Not Time-Barred.**

Finally, Mr. Cooper argues that all but two of Beltran's claims are time-barred. But, as Beltran specifically pleads, the statute of limitations have been tolled based on Defendant's concealment, the discovery rule, and the doctrine of continuing tort. D.E. 26 at ¶¶ 141–144. *See, e.g.*, *Gabrielli v. Haleon US Inc.*, 815 F. Supp. 3d 852, 869 (N.D. Cal. 2025). The Complaint also alleges that the interceptions occurred during Beltran's use of the website. D.E. 26 at ¶¶ 54, 126.

**CONCLUSION**

The Motion should be denied. In the event this Court dismisses, Plaintiff requests leave to amend.

Respectfully submitted,

Natalie Lyons, No. 293026
Vess A. Miller, No. 278020
Lynn A. Toops*
Lisa M. La Fornara*
COHENMALAD, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
(317) 636-6481
nlyons@cohenmalad.com
vmiller@cohenmalad.com
ltoops@cohenmalad.com
llafornara@cohenmalad.com

J. Gerard Stranch, IV*
Michael Tackeff
Stranch, Jennings & Garvey, PLLC
223 Rosa L. Parks Avenue, Suite 200
Nashville, Tennessee 37203
(615) 254-8801
(615) 255-5419 (facsimile)
gstranch@stranchlaw.com
eschiller@stranchlaw.com

Samuel J. Strauss*
Raina C. Borrelli*
Strauss Borrelli, PLLC
980 N. Michigan Avenue, Suite 1610
Chicago, Illinois 60611
(872) 263-1100
(872) 263-1109 (facsimile)
sam@straussborrelli.com
raina@straussborrelli.com

*To seek admission *pro hac vice*

*/s/ W. Mark Lanier*
W. Mark Lanier
Texas State Bar No. 11934600
WML@LanierLawFirm.com
Alex J. Brown
Texas State Bar No. 24026964
Alex.Brown@LanierLawFirm.com
Jonathan P. Wilkerson
Texas State Bar No. 24050162
Jonathan.Wilkerson@LanierLawFirm.com
THE LANIER LAW FIRM, P.C.
5049 Edwards Ranch Road, 4th Floor
Clearfork
Fort Worth, TX 76109
(817) 720-0509

10940 W. Sam Houston Pkwy N, Suite 100
Houston, TX 77064
Telephone: (713) 659-5200
Fax: (713) 659-2204

***Counsel for Plaintiffs and the Proposed Classes***

## CERTIFICATE OF SERVICE

I hereby certify that, on July 31, 2026, this document was electronically filed with the Clerk of the Court by using the CM/ECF system which will send notice of electronic filing to all parties of record.

*/s/ W. Mark Lanier*
W. Mark Lanier